STATE OF NORTH CAROLINA v. ARTHUR LAYTON DAVIS

No. 33

(Filed 11 October 1972)

1. Constitutional Law § 31; Criminal Law § 80— discovery denied — fishing expedition — work product of police

   Defendant's motion for discovery in a prosecution for rape and first degree burglary was properly denied where such motion was not made in accordance with G.S. 15-155.4 and where the motion amounted to a request for a fishing expedition and a request to receive the work product of police and State investigators.

2. Criminal Law § 131— newly discovered evidence — no motion for new trial — assertion of matter for first time on appeal

   Where defendant discovered, during jury deliberation, new evidence bearing on the charge of rape, but he failed to request a reopening of the case or to move for a new trial, he could not assert the matter for the first time on appeal.

3. Burglary and Unlawful Breakings § 8— first degree burglary — life imprisonment — cruel and unusual punishment

   Defendant who was sentenced to life imprisonment in a first degree burglary case could not complain of denial of his motion to quash the indictment on the ground that G.S. 14-52 authorizing the death penalty or life imprisonment was violative of the cruel and unusual punishment prohibition of the Constitution.

State v. Davis

4. **Criminal Law § 105— exception to refusal to grant motion for nonsuit — waiver**

Where defendant introduced evidence in his own behalf, he was precluded from raising on appeal the denial of a motion for nonsuit at the close of the State's evidence. G.S. 15-173.

5. **Burglary and Unlawful Breakings § 3— first degree burglary — improper street address — valid indictment**

Reference in an indictment for first degree burglary to a street address as 840 Washington Drive rather than as 830 Washington Drive did not render the indictment fatally defective.

6. **Indictment and Warrant § 17— variance of one day — time not of the essence — no fatal variance**

The statement in an indictment that the offense of burglary took place on 13 November 1971 while the evidence showed that it occurred on 14 November 1971 did not subject the indictment to quashal for variance since an offense in which time is not of the essence does not require absolute specificity in the indictment as to the date the crime was committed. G.S. 15-155.

7. **Criminal Law § 169— admission of evidence over objection — similar evidence admitted without objection**

Defendant could not complain of admission of testimony over his objection with respect to his prior criminal convictions where he subsequently testified in his own behalf as to his crimnal record and imprisonment.

8. **Criminal Law § 162— appeal — evidentiary questions — assignment of error — requirements**

An assignment of error with respect to the exclusion of testimony should set forth within itself the question asked, the objection, the ruling on the objection, and what the witness would have answered if he had been permitted to testify; where the record fails to show what the witness would have answered, the exclusion of his testimony is not shown to be prejudicial.

9. **Criminal Law § 115— first degree burglary — failure to charge on lesser degrees of crime — no error**

Where there was no evidence to support a conviction of a lesser crime than first degree burglary, the trial court did not err in failing to instruct the jury on lesser included offenses.

10. **Criminal Law § 127— motion in arrest of judgment**

A motion in arrest of judgment is generally made after verdict to prevent entry of judgment based on a defective indictment or some fatal defect on the face of the record proper.

11. **Criminal Law § 132— setting aside verdict as being contrary to weight of evidence**

A motion to set aside the verdict as being contrary or against the weight of the evidence is addressed to the discretion of the trial court, and a refusal to grant the motion is not reviewable on appeal.

APPEAL by defendant from *Hall, J.,* at the March 20, 1972 Criminal Session of CUMBERLAND Superior Court.

Defendant was tried on separate bills of indictment charging him with first degree burglary and with rape. The cases were consolidated for trial, and the jury returned a verdict of not guilty of rape but guilty of first degree burglary with a recommendation of life imprisonment. From sentence imposed in accordance therewith, defendant appealed.

The evidence for the State tends to show: Nina Ruth Baker, who resides alone at 830 Washington Drive, Fayetteville, North Carolina, came home from work about 4:30 p.m. on 13 November 1971, went out to pay some bills, and returned about 6:30 p.m. She remained at home all evening and retired around 11 p.m. Before retiring she ascertained that the two outside doors were locked. At 2 a.m. Miss Baker was awakened by the sound of breaking glass. She left the bedroom and went into the kitchen where she saw the defendant kicking the back door, the upper part of which was glass. The defendant forced the door open and entered the kitchen. Miss Baker "hollered," ran into the front room of the house and squatted between a table and television set. The defendant came into the room, grabbed her throat with his right hand and began choking her, saying, "You are going to do it, you are going to do it." He dragged Miss Baker into the bedroom and forcibly and against her will had sexual intercourse with her. Afterwards, in order that she might see his face, Miss Baker asked defendant to help clean up the broken glass in the kitchen. He agreed and picked up some of the glass, put it in a paper bag and placed the bag in the garbage can. While defendant was doing this, Miss Baker turned on the light in the kitchen and for the first time recognized the individual who had raped her as the defendant, Arthur Layton Davis. After he helped clean up, the defendant left through the kitchen door. Miss Baker then went to a neighbor's house and called the police. W. L. Truitt, the investigating officer, testified that ". . . the door had been forced open and had a hasp on it that was broken loose. The hasp was inside and there was glass on the kitchen floor. Some glass was left in the door. Glass had been scattered in the kitchen area . . . . I saw marks about her person. Some marks were on her throat and I believe one was on her knee also. The marks resembled fingerprints, the size of a finger or thumb."

The evidence of the defendant tends to show: On the night in question Nina Ruth Baker was at a place of business known as Big John's or Flintstones from about 8:30 p.m. to 11:00 p.m. drinking beer with a group of boys. Defendant and a friend, Joe McDowell, saw her there but left and later went to get some food at Vick's Drive-In II. They passed Miss Baker's house about 1:30 a.m. Miss Baker was on the porch and asked defendant to come in and pick up some glass on the floor. Joe McDowell waited on the porch while defendant went into the house, picked up the glass and put it into a paper bag. When he asked what had happened, Miss Baker said, "You broke in my house." The defendant responded, "You are crazy," and left out the front door. At no time did the defendant assault Miss Baker or have sexual intercourse with her.

*Attorney General Robert Morgan and Assistant Attorneys General William W. Melvin and William B. Ray for the State.*

*Neill Fleishman, Assistant Public Defender, for defendant appellant.*

MOORE, Justice.

[1] On 4 February 1971 defendant's counsel made a "Motion for Discovery," requesting that he be furnished all statements made by the prosecuting witness, the reports of the investigating officers in the case, all physical evidence obtained by these officers, any and all medical evidence and statements by physicians who may have examined the prosecuting witness, the names and addresses of all the State's witnesses and written summaries of their relevant testimony, and all other relevant information in possession of the sheriff's department or the solicitor's office. This motion was denied, and this constitutes defendant's first assignment of error.

The common law recognizes no right to discovery in criminal cases. *State v. Goldberg,* 261 N.C. 181, 134 S.E. 2d 334, cert. den. 377 U.S. 978, 12 L.Ed. 2d 747, 84 S.Ct. 1884 (1964). Subsequent to the decision in *Goldberg,* Chapter 1064, Session Laws of 1967, now codified as G.S. 15-155.4, was enacted. This statute provides that a pretrial order may require the solicitor, upon written demand, to produce for inspection and copy specifically identified exhibits to be used in the trial and to permit defense counsel to examine specific expert witnesses who may be called.

The purpose is to enable a defendant to guard against surprise documents and surprise expert witnesses. *State v. Peele,* 281 N.C. 253, 188 S.E. 2d 326 (1972) ; *State v. Macon,* 276 N.C. 466, 173 S.E. 2d 286 (1970). Defendant does not rely on G.S. 15-155.4 and did not attempt to comply with the terms of that statute. Defendant contends that since he did not know what exhibits the State might introduce or what expert witnesses might be called, it was impossible for him to comply with the requirements of the statute, and that he was therefore deprived of his right to pretrial discovery. Defendant further contends that without pretrial discovery he has been denied his right to due process of law, equal protection of law, and his right to effective assistance of counsel, contrary to the Constitutions of the United States and of the State of North Carolina. In *Goldberg,* where the defendants also made a motion for broad discovery, Justice Parker (later Chief Justice) disposed of a similar contention:

> "In our opinion, and we so hold, defendants here have not shown facts which would have warranted the trial court to enter an order in its discretion or as a matter of right allowing them to inspect the files of the State Bureau of Investigation in these criminal cases pending against them as prayed in their petition, and the denial of their petition does not violate any of their rights under Article I, sections 11 and 17 of the North Carolina Constitution, and under the Fifth, Sixth, Seventh, and Fourteenth Amendments to the United States Constitution."

*Accord,* 23 Am. Jur. 2d, Depositions and Discovery § 312 (1965).

In the present case only one exhibit, a piece of glass which was picked up in the kitchen by the prosecuting witness, was introduced. No expert witnesses were called or testified, and no statement of any witness was introduced. The defendant's motion requested practically the complete files of the sheriff's department and the solicitor's office pertaining to this case, and all the information obtained as the result of the investigation by the sheriff's department and the solicitor's office. "We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." *Moore v. Illinois,* 408 U.S. 786, 33 L.Ed. 2d 706, 92 S.Ct. 2562 (1972). Defendant was not entitled to the granting of his motion for a fishing

expedition nor to receive the work product of police or State investigators.

[2] The record does not show that the prosecuting witness was examined by a physician or that any statements were obtained from a physician. The defendant for the first time in his brief asserts that during jury deliberation he heard that the prosecuting witness was taken to the doctor and the doctor's report showed that her sexual organ had not been abused and no sperm was found in her vagina. Defendant did not request the trial judge to reopen the case for further cross-examination of the prosecuting witness or for the offer of testimony from the physician, nor did he make a motion for a new trial on the ground of newly discovered evidence. Defendant now seeks to bring up on appeal a matter which was not before the trial court and which is not before this Court and cannot now be asserted. *State v. Grundler* and *State v. Jelly,* 251 N.C. 177, 111 S.E. 2d 1, cert. den. 362 U.S. 917, 4 L.Ed. 2d 738, 80 S.Ct. 670 (1959) ; *State v. Dobbins,* 277 N.C. 484, 178 S.E. 2d 449 (1971).

[3] Defendant next contends that the court erred in denying his motion to quash the indictment on the ground that G.S. 14-52 authorizing the death penalty or life imprisonment is violative of the cruel and unusual punishment prohibition of the Eighth Amendment to the United States Constitution. This issue was disposed of by this Court in *State v. Barber,* 278 N.C. 268, 179 S.E. 2d 404 (1971). In that case defendant was convicted of rape and first degree burglary with the recommendation of life imprisonment. The Court stated:

" . . . G.S. 14-21 provides for the death penalty for rape, and G. S. 14-52 provides for the death penalty for burglary in the first degree. Both statutes provide that the jury may recommend life imprisonment. . . . The punishment imposed in this case was life imprisonment. When punishment does not exceed the limits fixed by statute, it cannot be classified as cruel and unusual in a constitutional sense."

The Supreme Court of the United States in *Furman v. Georgia,* 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726 (1972), held that the imposition of the death penalty, under certain state statutes and in the application thereof, was unconstitutional. That decision did not affect the conviction but only the death

sentence. *State v. Westbrook,* 281 N.C. 748, 191 S.E. 2d 68 (1972) ; *State v. Doss,* 281 N.C. 751, 191 S.E. 2d 70 (1972) ; *State v. Chance,* 281 N.C. 746, 191 S.E. 2d 65 (1972) ; *State v. Miller,* 281 N.C. 740, 190 S.E. 2d 841 (1972) ; *State v. Hamby and Chandler,* 281 N.C. 743, 191 S.E. 2d 66 (1972). In this case the jury recommended life imprisonment and this was the judgment of the trial court. The defendant has cited no authority in support of his contention that life imprisonment is cruel and unusual in violation of constitutional prohibition, and research has revealed none. This assignment of error is without merit.

[4]   Defendant next assigns as error the court's denial of his motion for nonsuit under G.S. 15-173 at the close of the State's evidence. G.S. 15-173 precludes a defendant on appeal from raising the denial of a motion for nonsuit at the close of the State's evidence if defendant has introduced evidence in his own behalf. *State v. Greene,* 278 N.C. 649, 180 S.E. 2d 789 (1971) ; *State v. Prince,* 270 N.C. 769, 154 S.E. 2d 897 (1967). Defendant in this case testified in his own behalf and presented nine witnesses who testified for him. This assignment is without merit.

[5]   Defendant also contends that the court should have granted his motion for a directed verdict of not guilty at the close of all the evidence. G. S. 15-173. Defendant does not challenge the sufficiency of the evidence to go to the jury. The basis for this motion is two variances between the indictment and the evidence offered during the trial. The indictment alleges that the defendant "did unlawfully . . . break and enter the dwelling house of Nina Ruth Baker located at *840* Washington Drive, Fayetteville, North Carolina." (Emphasis ours.) Miss Baker testified that she lived at *830* Washington Drive. There was no controversy as to the location of her residence, and the allegation that defendant "did unlawfully . . . break and enter the dwelling house of Nina Ruth Baker in Fayetteville, North Carolina," would have been sufficient.

The description of the house in this case was adequate to bring the indictment within the language of the statute. This house was also identified with sufficient particularity as to enable the defendant to prepare his defense and plead his conviction or acquittal as a bar to further prosecution for the same offense. *State v. Banks,* 247 N.C. 745, 102 S.E. 2d 245 (1958). As Chief Justice Parker stated in *State v. Sellers,*

273 N.C. 641, 161 S.E. 2d 15 (1968), quoting with approval from *State v. Burgess,* 1 N.C. App. 142, 160 S.E. 2d 105 (1968) :

> " ' . . . The ownership of the personal property in this case is alleged to be in an individual and the premises described, among other things, as the dwelling house occupied by Dreame A. Glover. In the light of the growth in population and in the number of structures (domestic, business and governmental), the prosecuting officers of this State would be well advised to identify the subject premises by street address, highway address, rural road address or some clear description and designation to set the subject premises apart from like and other structures described in G.S. Chap. 14, Art. 14. Nevertheless, in this case we hold that the indictment sufficiently described and designated the premises. The defendant's motion in arrest of judgment on the first count is denied.' "

The State in this case attempted to follow this recommendation of Chief Justice Parker, but erred in stating the street number. We hold, however, that this inconsequential error in the street address appearing in the indictment does not render the indictment fatally defective.

[6] Defendant further contends that the indictment is defective since it states that the offense occurred on 13 November 1971 whereas the evidence shows that the offense took place on 14 November 1971. An offense in which time is not of the essence does not require absolute specificity in the indictment as to the date the crime was committed. "The date mentioned in the bill of indictment was not of the essence of the offense charged. In such case, both by statute and by the decisions of this Court, it has been established that variance between allegation and proof as to time is not material where no statute of limitations is involved." *State v. Trippe,* 222 N.C. 600, 24 S.E. 2d 340 (1943). See *State v. King,* 256 N.C. 236, 123 S.E. 2d 486 (1962) ; *State v. Gillyard,* 246 N.C. 217, 97 S.E. 2d 890 (1957) ; G.S. 15-155. Defendant's assignment of error as to both variances is overruled.

[7] Patricia Thompson, a witness for the defendant, after having testified that she saw defendant in Big John's on 13 November 1971, testified: "Q. And did Arthur Layton Davis do that often? . . . Come in and drink and get nicknacks? A. Anytime after he (the defendant) got out he came there. From

---

State v. Davis

---

the time I was coming up, he came up there, you know; he was coming up there. Q. After he got out of where? Defendant objected. A. Prison, just like I said. COURT: OVERRULED." Defendant assigns as error the overruling of his objection to the question, "After he got out of where?" Normally, inquiry may not be made into criminal convictions of the defendant unless he has taken the stand and by testifying in his own behalf placed his credibility in issue. However, in this instance, the question of the solicitor was for the limited purpose of clarifying the previous statement of the witness. Assuming *arguendo* that the evidence was inadmissible, there was no prejudicial error. In the instant case the defendant subsequently testified in his own behalf as to his criminal record and his imprisonment on other charges. An objection to inadmissible testimony is waived when evidence of the same or like import is introduced without objection. *State v. Wright,* 270 N.C. 158, 153 S.E. 2d 883 (1967); *Mallet v. Huske,* 262 N.C. 177, 136 S.E. 2d 553 (1964). This assignment is overruled.

[8] The prosecuting witness on cross-examination testified that she knew William Burns but had never lived with him and had never threatened him. William Burns was called as a witness for defendant. He testified that he had lived with Miss Baker for four months on one occasion and two weeks on another. He was also asked: "Q. Has Miss Baker talked to you about this case? A. She said she was going to kill me. Q. Are you afraid of Miss Baker? OBJECTION by the State. COURT: SUSTAINED." Defendant contends the trial court erred in not allowing the witness to answer the question, "Are you afraid of Miss Baker?" This assignment does not comply with this Court's Rule 19(3) since the record does not show what the witness would have answered had he been permitted to do so. Therefore, it is impossible for us to know whether the ruling was prejudicial or not. Where the record fails to show what the witness would have testified had he been permitted to answer questions objected to, the exclusion of such testimony is not shown to be prejudicial. *State v. Kirby,* 276 N.C. 123, 171 S.E. 2d 416 (1969). The assignment of error should set forth within itself the question asked, the objection, the ruling on the objection, and what the witness would have answered if he had been permitted to testify. *Douglas v. Mallison,* 265 N.C. 362, 144 S.E. 2d 138 (1965). In our view, however, this question is immaterial, and the assignment is overruled.

The witness Burns was next asked the question: "Q. Has Miss Baker ever shown violence towards you? OBJECTION by State. A. She cut me across my foot. MOTION by State TO STRIKE. COURT: MOTION ALLOWED." Defendant contends that the court erred in allowing the State's motion to strike. Prior trouble between the prosecuting witness in this case and the witness Burns is irrelevant and immaterial. This assignment is without merit.

[9] Defendant next contends that the court erred in not instructing the jury on any lesser included offense under the indictment for first degree burglary. The elements of burglary in the first degree are: (1) the breaking (2) and entering (3) in the nighttime (4) with the intent to commit a felony (5) into a dwelling house or a room used as a sleeping apartment in any house or sleeping apartment (6) which is actually occupied at the time of the offense. *State v. Accor,* 277 N.C. 65, 175 S.E. 2d 583 (1970); G.S. 14-51. The evidence for the State showed a breaking and entering of the dwelling house of Nina Ruth Baker, accomplished by breaking the glass of the kitchen door and forcing it open, while the house was occupied by her at approximately 2 a.m., with the resulting commission of the felony of rape on the person of Nina Ruth Baker. Defendant's defense was in the nature of an alibi—that no crime was committed or, if so, he was not the perpetrator thereof. There is no evidence of a lesser included offense. The necessity for charging on the crime of a lesser degree arises only when there is evidence from which the jury could find that a crime of lesser degree was committed. *State v. Murry,* 277 N.C. 197, 176 S.E. 2d 738 (1970); *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969); 3 Strong, N.C. Index 2d, Criminal Law § 115. This assignment is overruled.

Defendant noted several exceptions to the charge. Although all have been considered, further discussion of these exceptions is unnecessary. The charge as a whole presents the law fairly and clearly to the jury, and isolated portions of it will not be held prejudicial. *State v. Alexander,* 279 N.C. 527, 184 S.E. 2d 274 (1971); *State v. Cook,* 263 N.C. 730, 140 S.E. 2d 305 (1965). The instructions are in substantial accord with our decisions, and the assignments relating thereto are without merit.

[10, 11] Defendant finally contends that the trial court erred in overruling his motion for arrest of judgment and his motion

to set aside the verdict as being contrary to the weight of the evidence. A motion in arrest of judgment is generally made after verdict to prevent entry of judgment based on a defective indictment or some fatal defect on the face of the record proper. *State v. Fletcher,* 279 N.C. 85, 181 S.E. 2d 405 (1971) ; *State v. Kirby, supra.* No such defect appears in this case. A motion to set aside the verdict as being contrary or against the weight of the evidence is addressed to the discretion of the trial court, and a refusal to grant the motion is not reviewable on appeal. *State v. Henderson,* 276 N.C. 430, 173 S.E. 2d 291 (1970). This assignment is overruled.

Upon sharply conflicting evidence the jury found the defendant guilty of first degree burglary. We have carefully examined the entire record and in the trial, verdict, and judgment we find no prejudicial error.

No error.