STATE OF NORTH CAROLINA v. JAMES WESLEY BLUE

No. 738SC689

(Filed 9 January 1974)

1. **Criminal Law § 75— statements to police — admissibility**
   Statements made by defendant to a police officer were properly admitted in evidence after the court conducted a *voir dire*, made findings of fact and concluded that defendant's constitutional rights had not been violated; furthermore, defendant was not prejudiced by admission of the statements since they were exculpatory.

2. **Criminal Law § 80— right to inspect officer's notes — statute**
   G.S. 15-155.4 does not give defense counsel the right to inspect notes discovered in the pocket of a law officer during the trial.

3. **Constitutional Law § 31; Criminal Law § 80— notes in officer's pocket — no right of inspection by defendant**
   Where defense counsel discovered the existence of notes in the shirt pocket of a deputy sheriff during his cross-examination of the deputy, and the deputy did not use the notes during his testimony, motion by defense counsel that he be allowed to inspect the notes was properly denied by the court on the ground that the notes were the work product of the police.

APPEAL by defendant from *Lanier, Judge,* 26 March 1973 Session of Superior Court held in WAYNE County.

This is a criminal action in which the defendant, James Wesley Blue, was charged in a bill of indictment, proper in form, with the first degree murder of Sadie Marie Highsmith. Upon arraignment, the defendant pleaded not guilty to the crime charged.

The State offered evidence which tended to show the following: On 6 October 1972 defendant and a friend, Dock Wilkerson, were working on the farm of J. W. Bryant near Grantham, North Carolina. At approximately 6:00 p.m. defendant and Wilkerson departed from work in Wilkerson's automobile and made brief stops in Dudley and Goldsboro prior to driving to defendant's home. They arrived at defendant's home at approximately 7:30 p.m., and Wilkerson testified as to the following events:

"When we got to his house I saw a person I knew as Sadie there. I don't know her last name. I had known her because we had all barned tobacco together, Sadie, James, and me.

I saw Sadie when she came to the front door of James Blue's house."

*    *    *

"She was standing right in the doorway. There were lights on in the house behind her but none in front of her. When I saw her she was standing with the light behind her and none in front of her but I could tell what color dress she was wearing."

Wilkerson did not get out of his car at defendant's home and left as soon as defendant got out of the vehicle.

At about 10:00 p.m. on the same day, Deputy Sheriff Coley of the Wayne County Sheriff's Department received a telephone call from defendant and was instructed by defendant to drive to a designated point on Highway 13 South, near Grantham. Upon arriving at this site, the deputy sheriff observed defendant standing beside the road, and defendant stated that he had just arrived home and found Sadie Highsmith in a puddle of blood. Deputy Sheriff Coley testified as follows:

"He took us in the house and in the back room where we found the deceased. The deceased was a black female dressed only in socks. The other portions of her body were bare. She was lying on the floor face up. I observed the wounds on her face, head, arms and legs. At the time we observed her I have an opinion that she was dead."

Further investigation revealed a bloody axe head five feet from where the deceased was lying, a bedroom spattered with blood, a wash basin which had blood stains on it, and blood on defendant's hands, under his fingernails, and behind his right ear.

Mark Bryant and Crow Best, both of whom worked with defendant on the farm of J. W. Bryant, testified as to separate statements made to them by defendant. Bryant testified that:

"On Wednesday before the 6th of October, 1972, we were out there talking and James Blue he said that his wife had made him mad about spending his money or something like that and he said that she wouldn't do it anymore because he would chop her up with the axe and kill her."

Best talked with defendant two days later and during the course of their conversation defendant said that:

> "Sadie wouldn't spend any more of his money or he would kill her. Before she would he would kill her and cut her up with the axe."

The State also offered the testimony of Dr. Louis Lefer, a medical doctor working with the Office of the Chief Medical Examiner of North Carolina, who testified that in his opinion the cause of death was loss of blood due to the wounds on the body and that in his opinion the time of death was between 6:00 p.m. and 12:00 p.m. on 6 October 1972.

The jury found defendant guilty of second degree murder and from a judgment imposing a prison sentence of twenty to twenty-five years, defendant appealed.

*Attorney General Robert Morgan and Associate Attorney C. Diederich Heidgerd for the State.*

*Herbert B. Hulse and George F. Taylor for defendant appellant.*

HEDRICK, Judge.

Defendant assigns as error the denial of his motions for judgment as of nonsuit. These motions were properly denied as there was plenary, competent evidence to submit the case to the jury and to support the verdict rendered.

[1] Defendant's next two assignments of error raise the question of whether certain statements made by the defendant were properly admitted into evidence. The first of these statements was made on 6 October 1972 by the defendant to Deputy Sheriff Coley shortly after the latter had arrived to conduct his investigation. Officer Coley testified as follows:

> "Mr. James Wesley Blue stated that he arrived home and found his wife in a puddle of blood and at that time I asked Mr. Blue had he touched anything or moved her or in any way at all and he said no, he had not."

The second statement introduced in evidence was made by the defendant the next day at the sheriff's office and consisted of the following:

"[W]hen I got home, Dock put me out in front of my house. [Sadie was standing in the door.] I got my beer and went on into the house. Me and Sadie sit down and dranked the two beers and talked awhile. * * * When I changed clothes I got out and walked across the field to a neighbor's house. When I arrived at the neighbor's house there wasn't anyone at home so I turned round and came back to my house. When I came into the house I found Sadie in the back bedroom cut up wih blood all over her. I then went out to the barn and called the sheriff's office."

The State offered evidence of these statements on two separate occasions and each time prior to admission of such statements, the trial court, following the practice approved by a long line of decisions, conducted a *voir dire* into the circumstances surrounding the making of these statements. *State v. McRae*, 276 N.C. 308, 172 S.E. 2d 37 (1970); *State v. Moore*, 275 N.C. 141, 166 S.E. 2d 53 (1969); *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1 (1966). At the completion of each *voir dire* the court made findings of fact and concluded that the defendant's constitutional rights had not been violated. We deem that this procedure sufficiently insured that defendant's statements were voluntarily, understandingly, and freely made. Furthermore, it is worthy of note that the statements introduced were of an exculpatory nature as opposed to inculpatory; thus, the defendant could not possibly have suffered any prejudice by their admission. These assignments of error are not sustained.

[2, 3] Next, defendant contends that the trial court erred in not allowing him to inspect certain notes which were located in the shirt pocket of Deputy Sheriff Davis and which were discovered for the first time by defendant's counsel upon his cross-examination of Deputy Sheriff Davis. These notes had not been used by the witness to refresh his memory. The trial judge, terming the notes the work product of the police, refused the defendant's counsel's motion requesting that he be allowed to inspect the notes. Although there is no common law right to discovery in criminal actions, *State v. Davis*, 282 N.C. 107, 191 S.E. 2d 664 (1972); *State v. Goldberg*, 261 N.C. 181, 134 S.E. 2d 334, cert. denied 377 U.S. 978, 12 L.Ed. 2d 747, 84 S.Ct. 1884 (1964), G.S. 15-155.4 provides for pretrial investigation in criminal cases in certain limited circumstances. The statute provides that the defense counsel, by showing good cause and adhering to the established time limitations, can inspect specific

exhibits and examine expert witnesses. Clearly, the notes sought by defendant do not fall within either of these latter categories; therefore, resolution of this question is not controlled by G.S. 15-155.4, *State v. Gaines,* 283 N.C. 33, 194 S.E. 2d 839 (1973). Rather, we believe this case is similar to *State v. Davis, supra,* in that both cases involve the attempted discovery of certain information held by law enforcement officials.

Admittedly, the *Davis* case was concerned with a pretrial investigation and involved a more widespread request for information; however, we think that the court's denial of the defendant's motion because it concerned the work product of police is germane to the present case. The court in *Davis* further emphasized the importance of the sanctity of police investigation by including within its opinion the following quote from *Moore v. Illinois,* 408 U.S. 786, 33 L.Ed. 2d 706, 92 S.Ct. 2562 (1972):

> "We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case."

Furthermore, defendant has failed to show how, if at all, he was prejudiced by the failure of the trial court to order the notes in question to be turned over to him. We find this assignment of error to be without merit.

The defendant has brought forward several other assignments of error which we have carefully reviewed and find to be without merit.

No error.

Judges MORRIS and BALEY concur.