STATE OF NORTH CAROLINA v. ARTHUR S. KAPLAN

No. 7415SC565

(Filed 6 November 1974)

1. **Criminal Law §§ 80, 91— police files — motion to examine — continuance properly denied**

The trial court did not err in denying defendant's motion for continuance based on the refusal of the State to furnish matters

requested in defendant's motions for a bill of particulars where defendant's request asked for practically the complete files of the investigating officers and all the information obtained by the investigating officers and solicitor's office as the result of their investigation. G.S. 15-143; G.S. 15-155.4.

2. **Constitutional Law § 31; Criminal Law § 80— access to evidence — limitation no denial of constitutional rights**

Defendant's constitutional rights were not abridged by failure of the trial court to allow defendant an inspection of all papers, documents, and exhibits and examination of any expert witness of the State.

3. **Constitutional Law § 30; Narcotics § 1— possession of marijuana with intent to distribute — constitutionality of statute**

In a prosecution for possession of marijuana with intent to distribute, the trial court did not err in denying defendant's motion to quash the bill of indictment against him based on defendant's contentions that the statutes under which he was charged create a statutory presumption which violates defendant's constitutional rights and that the N. C. Constitution and the Fourteenth Amendment to the U. S. Constitution forbid the statutory enactment of any legislation criminalizing marijuana.

4. **Searches and Seizures § 1— tent in woods — warrant not required for search**

Where the evidence showed that a tent in which marijuana was found was not a building within the curtilage nor was the area in which it was found an immediate part of the dwelling site, no search warrant was necessary for officers to search the tent-like structure, and evidence seized therefrom was properly admitted in a prosecution of defendant for possession of marijuana with intent to distribute.

5. **Narcotics § 4— marijuana in tent in woods — constructive possession**

Evidence was sufficient to show that defendant was in constructive possession of a tent-like structure located in the woods one-eighth of a mile from his house where it tended to show that witnesses observed defendant coming from the house with two bags, going directly to the tent, placing the two bags therein, and returning directly to the house, no one accompanied defendant, and no one else attempted to go to the tent.

APPEAL by defendant from *Gambill, Emergency Judge,* 18 February 1974 Session Superior Court, CHATHAM County. Heard in the Court of Appeals 17 September 1974.

Defendant was charged with possession of marijuana with intent to distribute. The jury found him guilty, and he appealed from judgment entered on the verdict. Facts necessary to decision will be set out in the opinion.

*Attorney General Carson, by Deputy Attorney General Vanore, for the State.*

*Winston, Coleman, and Bernholz, by Roger B. Bernholz, for defendant appellant.*

MORRIS, Judge.

We note at the outset that defendant's brief makes no reference to any exceptions in the record on appeal. For the failure to abide by the rules of appellate procedure, specifically Rule 28, Rules of Practice in the Court of Appeals of North Carolina, defendant's appeal is subject to dismissal upon the grounds that he has abandoned all exceptions. However, we have chosen to decide this case on its merits in view of defendant's notion that the case has grave constitutional import.

[1] Appellant first assigns as error the court's denial of his motion to continue. The motion was bottomed on the refusal of the State to furnish the matters requested in defendant's motions for a bill of particulars under G.S. 15-155.4 and G.S. 15-143. G.S. 15-143 provides that the court may, in its discretion, require the solicitor to furnish defendant with requested information for better preparation of his defense. Defendant's second motion for a bill of particulars was under that statute. He has shown no abuse of discretion nor does the record disclose any. G.S. 15-155.4 provides that the court "shall *for good cause shown,* direct the solicitor or other counsel for the State to produce for inspection, examination, copying and testing by the accused or his counsel any *specifically identified exhibits* to be used in the trial of the case sufficiently in advance of the trial to permit the accused to prepare his defense; . . . " (Emphasis supplied.) It is significant that defendant does not ask for that which the statute provides, to wit: specifically identified exhibits. The request asked for copies of all reports prepared by police or other agents or employees of the State; statements of witnesses; statements of defendant; names, addresses and occupations of witnesses; copies of any documents signed by defendant; agreement of the solicitor for defendant to examine before the Clerk *any* expert witness to be offered by the State; the delivery to defendant for his examination and testing of the substance confiscated from him alleged to be a controlled substance. The defendant's request asked for practically the complete files of the investigating officers and all the information obtained by the investigating officers and solicitor's office

as the result of their investigation. We quote Justice Moore, writing for a unanimous Court in *State v. Davis,* 282 N.C. 107, 111, 191 S.E. 2d 664 (1972) :

" 'We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.' *Moore v. Illinois,* 408 U.S. 786, 33 L.Ed. 2d 706, 92 S.Ct. 2562 (1972). Defendant was not entitled to the granting of his motion for a fishing expedition nor to receive the work product of police or State investigators."

Certainly the court is not required to turn over the seized contraband to defendant and take the chance of not being able to introduce it into evidence at trial because of breaks in the chain of possession or other reasons.

[2] Defendant further contends that he was denied the reasonable opportunity to prepare his defense, that his constitutional right of confrontation was abridged, that he was denied due process all by reason of the denial of his motion for continuance and the failure of the court to direct the solicitor to accede to the requests filed by defendant. In *State v. Goldberg,* 261 N.C. 181, 134 S.E. 2d 334, cert. denied 377 U.S. 978, 12 L.Ed. 2d 747, 84 S.Ct. 1884 (1964), defendant had made a motion for broad discovery and on appeal had raised questions of denial of constitutional rights. Although Goldberg was decided prior to the enactment of G.S. 15-155.4, we think Justice Parker's (later C.J.) statement is applicable to the facts before us:

"In our opinion, and we so hold, defendants here have not shown facts which would have warranted the trial court to enter an order in its discretion or as a matter of right allowing them to inspect the files of the State Bureau of Investigation in these criminal cases pending against them as prayed in their petition, and the denial of their petition does not violate any of their rights under Article I, sections 11 and 17 of the North Carolina Constitution, and under the Fifth, Sixth, Seventh, and Fourteenth Amendments to the United States Constitution." *State v. Goldberg, supra,* at 192-193.

For an excellent discussion of the underlying objections to giving criminal defendants an unqualified right to an inspection of all papers and documents, if any, in the files of the investigative or prosecutorial officers, see *State v. Tune,* 13 N.J. 203,

98 A. 2d 881 (1953). Defendant's first assignment of error is overruled.

[3]   By his second assignment of error defendant contends that the court erred in denying his motion to quash the bill of indictment for the reason that the indictment charged the defendant with a crime pursuant to statutes which are violative of defendant's constitutional rights to due process of law and the equal protection of the laws. In support of this contention defendant poses two arguments: that the statutes create a statutory presumption which violates defendant's constitutional rights and that the Constitution of North Carolina and the Fourteenth Amendment to the Constitution of the United States forbid the statutory enactment of any legislation criminalizing marijuana. Neither of these positions is well taken. With respect to the first, we reaffirm the position of this Court in *State v. Maggio,* 19 N.C. App. 519, 199 S.E. 2d 138 (1973), and earlier cases cited therein and in *State v. McAuliffe,* 22 N.C. App. 601, 207 S.E. 2d 1 (1974). As to the second, we take defendant's position to mean that because there is debate and disagreement as to whether the use of marijuana is injurious to the user, the State has acted beyond its constitutional power in making its possession and sale illegal. Defendant also argues that he has a fundamental right to make a fool of himself so long as he, by so doing, does not endanger others. It is not our purpose to treat defendant's arguments lightly. However, we see nothing in his position deserving of lengthy treatment. Suffice it to say that all 50 States and the Federal Government make the possession of marijuana illegal. We have no intention of taking the position that they have exceeded their constitutional powers. This assignment of error is overruled.

The third assignment of error is directed to the court's denial of defendant's motion to suppress evidence obtained as the result of a search of defendant's premises.

Evidence with respect to the alleged invalid search was as follows: Officers had the house where defendant lived under surveillance on the night of 8 November 1973. Officer Brown testified that at approximately 10:40 p.m. he saw a person leave from the back side of the residence with a flashlight in his hand and enter the wooded area to the right and rear of the dwelling house. The person himself was lost from witness's sight, but the flashlight beam could be seen in the woods for quite some time. Approximately ten minutes later the person was again seen

coming nearer the house, and he re-entered the house. Officer Brown stated that a few minutes before he saw the subject leave from the back of the house, he had seen two white males come from the house and step under the balcony area. He recognized one of them at the time. He stated that since he had seen defendant he could state that the other one was Arthur Kaplan, the defendant. He heard the other person say, "I'll probably need more soon," and defendant Kaplan reply: "I'll try to have it for you when you need it. It's good weed." Witness missed the rest of the conversation because he tried to conceal himself better since the two men had turned on several outside lights. Approximately five to ten minutes after the other person left witness saw "a subject I can identify in court as Mr. Kaplan" leave from the balcony area. He was wearing brown boots, corduroy type trousers, and a light colored shirt. Over his right shoulder he was carrying a large dark colored bag and, along with it, a light bag which was smaller. He passed within two feet of the witness. In witness's haste to conceal himself when the lights were turned on, he had lost his hat, and defendant stepped on the hat. After defendant passed by, witness crawled from his location so he could look down the path. He saw defendant turn up the path into a wooded area and lost sight of him. Some five to ten minutes later defendant came back by witness without the bags and went back in the house. Witness left his position and joined Deputy Tripp who was positioned down the pathway in the woods. They proceeded to a location pointed out by Tripp at which was found a polyethylene covering over some boughs draped like a Hogan-type tent. This was at the end of the pathway. In the tent structure were two bags—a dark colored one and a lighter colored one. He closed the flap and laid two sticks across the area and Deputy Tripp put a couple of rocks there so he could identify them.

Officer Tripp testified that he had stationed himself in a wooded area just to the right of a pond which was back of defendant's house. There was a small building "right near" his location which appeared to be a storage building. Officer Tripp observed two subjects come out on the balcony of the house, the area was well lighted, and he could see that one of them was the defendant. The other man left in an automobile, and defendant went back in the house, turned out the lights, and in two or three minutes came back out of the house, down the balcony and down the path described by Agent Brown earlier. He had two bags on his shoulder, a light colored bag and a dark colored

bag, the light colored one being the smaller of the two. He came across the head of the pond, passed within 15 feet of the witness, came around in front of the building and up an incline where the path continued on up through the woods to the location of the "tent." Witness followed defendant to the location keeping about 100 feet behind him—far enough so he could move and not be heard. Defendant went to the tent and witness got behind a tree to the left of the path. When defendant came back by witness's location he did not have either bag. Witness saw defendant go to the tent but could not positively identify him because of the light.

The two then went and obtained a search warrant and returned. In their search of the house, they found a large marijuana cigarette in the bedroom. In their search of the tent they found the two bags. The larger one contained three brick-like forms which were later determined to be marijuana.

The path was a well-worn pathway which went in a direction from the front of the dwelling, beside the pond area, turned around the pond area and went into the wooded area. The spot where the tent was found was approximately one-eighth of a mile from the dwelling. There was at least four other residences on the same side of the pond as defendant's. The tent was on the other side of the pond and there is another residence on that side of the pond near the dam. The path was not seen beyond the tent. Nor does it go all around the pond.

[4] Defendant urges that the officers conducted a warrantless search when they first opened the tent and saw the bags and that the obtaining of a search warrant did not make legal a search he contends was illegal. We do not agree that there was an illegal search—i.e., a search without a warrant where a warrant was necessary. In *State v. Harrison*, 239 N.C. 659, 80 S.E. 2d 481 (1954), at page 662, Justice Denny (later C.J.) said:

> "It seems to be generally held that the constitutional guaranties of freedom from unreasonable search and seizure, applicable to one's home, refer to his dwelling and other buildings within the curtilage but do not apply to open fields, orchards, or other lands not an immediate part of the dwelling site. Machen, *The Law of Search and Seizure,* page 95 (citing *Hester v. United States*, 265 U.S. 57, 44 Sup. Ct. 445, 68 L.Ed. 898) ; Cornelius, *Search and Seizure,* Second Edition, page 49; 48 C.J.S., Intoxicating Liquors,

section 394, page 630, et seq.; 30 Am. Jur., Intoxicating Liquors, section 528, page 529; Anno. 74 A.L.R. 1454, where numerous cases on this point are collected, among them being: *Simmons v. Commonwealth,* 210 Ky. 33, 275 S.W. 369; *S. v. Cobb,* 309 Mo. 89, 273 S.W. 736; *Penney v. State,* 35 Okla. Crim. Rep. 151, 249 P. 167; *Sheffield v. State,* 118 Tex. Crim. Rep. 329, 37 S.W. 2d 1038; *Field v. State,* 108 Tex. Crim. Rep. 112, 299 S.W. 258. So, if it be conceded that the gallon of nontax-paid liquor involved in the present case was found near the premises of the defendant but actually on the land of another and not within the curtilage of the dwelling of the owner thereof, a search warrant was not necessary for its seizure and the admissibility of evidence with respect thereto." Quoted with approval in *State v. Spencer,* 281 N.C. 121, 187 S.E. 2d 779 (1972).

[5]  We think the evidence clearly shows that the tent was not a "building within the curtilage" nor was the area in which it was found "an immediate part of the dwelling site." See *Hester v. United States,* 265 U.S. 57, 68 L.Ed. 898, 44 S.Ct. 445 (1924). No search warrant was necessary for the officers to search the tent-like structure. There was plenary evidence that the structure was in the constructive possession of defendant. Witnesses identified him as coming from the house, with two bags, going directly to the tent, placing the two bags therein and returning directly to the house. No one was with him nor did anyone else attempt to go to the tent. We hold that no search warrant was required for the search—the first or second time— and the evidence obtained was clearly admissible.

By assignment of error No. 3 defendant contends that the State failed to establish the legality of the search by producing a valid search warrant. Our holding that the officers did not need a search warrant to conduct a legal and reasonable search of the tent makes this assignment of error moot.

Defendant had a fair trial free from prejudicial error and was represented by competent counsel.

No error.

Chief Judge BROCK and Judge MARTIN concur.