STATE OF NORTH CAROLINA v. KEITH DOUGLAS WILSON

No. 57

(Filed 12 January 1982)

1. **Criminal Law § 169.6— exclusion of testimony—failure of record to show answer of witness**

   Where the record failed to show what the answer of a witness would have been had he been allowed to answer a question, the exclusion of such testimony was not shown to be prejudicial.

2. **Homicide § 15.2— intent to kill—exclusion of defendant's testimony—absence of prejudice**

   The trial court in a homicide case did not commit prejudicial error in refusing to permit defendant to testify whether he had the intention of killing the victim where, in other portions of defendant's testimony, he clearly conveyed to the jury his contention that he did not intend to kill the victim by explaining that he was so angry that in reality he did not know what he was doing, that he panicked, that he was not in his right mind, and that he had not made up his mind to kill the victim.

3. **Homicide § 28.1— perfect or imperfect self-defense—instruction not required**

   In a prosecution for first degree murder, the circumstances shown to exist at the time defendant shot the victim were not sufficient to create a reasonable belief in the mind of a person of ordinary firmness that killing the victim was necessary to save defendant from death or great bodily harm, and defendant was therefore not entitled to an instruction on either perfect or imperfect self-defense, where the evidence tended to show that the victim had started two fights with defendant at a vacant lot and had threatened to kill him, but those altercations were over prior to the time defendant left the lot, drove to his home, and obtained a pistol; when defendant returned to the lot with the pistol, he inquired as to where the victim was, found the victim standing by the open door of a car, walked up to the victim and hit him; and as the victim turned and reached into the car defendant shot him in his back.

APPEAL by defendant from *Burroughs, J.,* at the 12 January 1981 Criminal Session of GASTON Superior Court.

Upon a plea of not guilty, defendant was tried on a bill of indictment charging him with the murder of Joe Reid. Prior to the selection of the jury, a conference was held in chambers to determine what aggravating circumstances the state would contend should be considered by the jury at a sentencing hearing if defendant were found guilty of first-degree murder. The court concluded that the state was unable to show any of the aggravating circumstances listed in G.S. 15A-2000(e). Thereupon, the case was presented to the jury as a "non-death penalty" case.

The state presented evidence which is summarized in pertinent part as follows:

On the evening of 7 August 1980 Reid and Billie Nichols rode with Bradford Byrd onto a vacant lot in Mount Holly, N.C. where the Rollins School building was formerly located. Defendant and several other persons were already present when Reid and his group arrived. All of those present had attended the Rollins School and were acquainted with one another. They proceeded to drink beer, smoke marijuana and talk about their school days.

After a while, Byrd, Nichols and Reid decided to leave but Byrd's car would not start. Defendant bet Byrd $10.00 that the starter on the car was defective. Byrd bet defendant that a weak battery was the trouble. Nichols "held the money" for the bettors. A battery was borrowed from another car on the lot and placed in Byrd's car. With the aid of this battery the car started and Byrd collected his bet. While others were removing the borrowed battery from Byrd's car and replacing the batteries in the respective cars, Byrd and defendant began arguing as to whose car would run faster. Reid joined in the conversation. Defendant was waving his hands as he talked and Reid slapped one of them. Thereupon, defendant and Reid began tussling. They fell to the ground and defendant was on top of Reid, holding him down. Although defendant and Reid were about the same height, defendant weighed some 50 or 60 pounds more than Reid.

Others present separated the combatants and defendant walked several yards away to Byrd's car. Reid followed him, proceeded to strike defendant's jaw and another fight ensued. Defendant threw Reid down on the hood of the car, breaking the radio antenna. The combatants were separated again and Reid threatened to kill defendant. In one of the incidents, Reid's arm was cut, presumably by a sharp rock or other object on the ground.

After telling Reid that he had better not be there when he (defendant) returned, defendant left the lot in his automobile. Defendant went to his home which was located a short distance from the lot. Two of his friends followed defendant to his home where they saw him with a gun, a long .22 caliber pistol. In spite of the pleas of his friends not to do so, defendant returned to the Rollins School lot.

When defendant arrived back at the lot, Reid was looking under the hood of Byrd's car. Defendant asked where Reid was, whereupon Reid saw him. Reid backed up a few steps and paused between the car and the open, left front door. Defendant approached Reid and hit him in his face. As Reid turned and took not more than one or two steps, defendant shot him one time in his upper back. Reid fell to the ground after which defendant kicked him and said "Die mother ---". Defendant then left the scene, telling the others not to follow him or they would get "the same thing". Reid died shortly thereafter from hemorrhaging caused by the bullet wound.

Defendant presented evidence including his own testimony. In most respects the testimony of defendant and his eyewitnesses was similar to that given by the state's eyewitnesses. However, defendant testified that he did not know why he went home; that after he returned to the scene and slapped Reid, Reid turned and reached as if he were going into Byrd's car; and that he thought Reid was reaching for a gun.

Other evidence pertinent to the questions raised on appeal will be referred to in the opinion.

The court instructed the jury that it was the jury's duty to return a verdict of (1) guilty of first-degree murder, (2) guilty of second-degree murder, (3) guilty of voluntary manslaughter, or (4) not guilty. The jury returned a verdict finding defendant guilty of first-degree murder and the court entered judgment imposing a life sentence.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Elizabeth C. Bunting, for the state.*

*Adam Stein, Appellate Defender, and Marc D. Towler, Assistant Appellate Defender, for defendant.*

BRITT, Justice.

Defendant has grouped his assignments of error into four questions in which he contends that the trial court committed prejudicial error in excluding certain evidence proffered by him, and in its instructions to the jury. We find no merit in any of the assignments and leave undisturbed the judgment entered.

I

Defendant argues that a crucial issue in this case is whether he had a reasonable belief that he was in danger of death or great bodily harm at the hands of Reid. He refers to his testimony that after slapping Reid and seeing him turn and make a gesture towards the inside of Byrd's car, he believed Reid was attempting to reach into the car for the purpose of getting a gun. To support his position that he shot Reid in self-defense, he offered certain testimony by himself, Anthony Burch, Derrick Alexander and Casey Grier which was excluded by the court.

[1] Anthony Burch, an eyewitness to the homicide, was presented as a witness by the state. On cross-examination he stated that he did not know anything about Byrd carrying a gun in his car. The witness was then asked: "Had you heard he carried a gun in his car?" The state objected and the objection was sustained. The record fails to show what the witness' answer would have been had he been allowed to answer the question. That being true the exclusion of such testimony is not shown to be prejudicial. *State v. Davis*, 282 N.C. 107, 191 S.E. 2d 664 (1972).

On direct examination defendant was asked why he carried his gun with him when he returned to the Rollins School lot. He answered, "Well, because I had heard that Bradford (Byrd)—". At this point the state objected and the objection was sustained. For the reason given above with respect to Burch's testimony, we hold that defendant has failed to show prejudicial error.

Derrick Alexander was presented as a witness by defendant. In giving his version of the second encounter between Reid and defendant, the witness stated that Byrd came over to the place where defendant was; that "I didn't know whether he was going to hit Spunky (defendant) or not so I was just watching his back for him"; that Alexander said "just let them fight it out"; and that Byrd said "he was going to get his stuff". The witness was then asked "what did you understand (Byrd) to mean when he said he was going to get his stuff?". The court sustained the state's objection to the question.

Here again the record fails to show what the witness' answer would have been had he been allowed to answer the question. That being true, defendant has failed to show prejudice. *State v. Davis, supra.*

Casey Grier, another eyewitness to the homicide, was presented as a witness by defendant. In giving his version of what happened immediately prior to the shooting, he testified that when defendant hit Reid, Reid was standing at the open, front door on the left side of Byrd's car; and that Reid then "bent over a little bit and was bending toward the car". The record then reveals:

> Q. What effort, if any, did you see Reid make to get into the car of Bradford Byrd?
>
> MR. HAMRICK: Objection.
>
> THE COURT: Overruled.
>
> A. From what I seen, it was an effort going that way.
>
> MR. HAMRICK: Objection. Motion to strike.
>
> THE COURT: Members of the jury you won't consider that last answer.
>
> EXCEPTION NO. 12
>
> After Keith hit him, he turned around that way and was going toward the open door when Keith shot him.

Defendant argues that the trial court erred in instructing the jury not to consider "that last answer". Assuming, *arguendo*, that the court erred, the error was not prejudicial in view of the fact that the witness immediately thereafter stated that Reid was going toward the open door when defendant shot him. "The exclusion of evidence cannot be held prejudicial when the same witness thereafter testifies to substantially the same facts." 4 Strong's N.C. Index 3d, Criminal Law, § 169.7. *See also State v. Colvin,* 297 N.C. 691, 256 S.E. 2d 689 (1979).

## II

[2] Defendant argues that the trial court committed prejudicial error in refusing to allow him to testify whether he had the intention of killing Reid. On direct examination, as defendant was giving his version of what happened at the time of, and just before, the shooting, he stated that he was still angry after going to his home and returning to the school lot; and that "I didn't ever cool off any at all". He was then asked "[d]id you have any intention of

killing Mr. Reid?". The state's objection was sustained and defendant did not answer the question.

Once more the record does not reveal what the witness' answer would have been; therefore, defendant has failed to show prejudice. *State v. Davis, supra.* Even so, in other portions of his testimony defendant was allowed to testify as to his actions and the reasons behind them. He explained that he was so angry that in reality he did not know what he was doing, that he had panicked, that he was not in his right mind, and that he had not made up his mind to kill Reid. We think defendant clearly conveyed to the jury his contention that he did not intend to kill Reid.

## III

[3] By his assignment of error number 8, defendant contends that the trial court erred in failing to instruct the jury on self-defense. By his assignment of error number 9, he argues that the court erred in failing to instruct the jury that they could find him guilty of voluntary manslaughter based on imperfect self-defense. We find no merit in either assignment.

In the recent case of *State v. Norris,* 303 N.C. 526, 279 S.E. 2d 570 (1981), Justice Huskins, speaking for this court, clearly articulated the law in this jurisdiction relating to perfect self-defense and imperfect self-defense as follows:

> The law of perfect self-defense excuses a killing altogether if, at the time of the killing, these four elements existed:
>
> (1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and
>
> (2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and
>
> (3) defendant was not the aggressor in bringing on the affray, *i.e.,* he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, *i.e.*, did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Potter*, 295 N.C. 126, 244 S.E. 2d 397 (1978); *State v. Deck*, 285 N.C. 209, 203 S.E. 2d 830 (1974); *State v. Wynn*, 278 N.C. 513, 180 S.E. 2d 135 (1971); *State v. Woods*, 278 N.C. 210, 179 S.E. 2d 358 (1971); *State v. Ellerbe*, 223 N.C. 770, 28 S.E. 2d 519 (1944). The existence of these four elements gives the defendant a *perfect right of self-defense* and requires a verdict of not guilty, not only as to the charge of murder in the first degree but as to all lesser included offenses as well.

On the other hand, if defendant believed it was necessary to kill the deceased in order to save herself from death or great bodily harm, and if defendant's belief was reasonable in that the circumstances as they appeared to her at the time were sufficient to create such a belief in the mind of a person of ordinary firmness, but defendant, although without murderous intent, was the aggressor in bringing on the difficulty, or defendant used excessive force, the defendant under those circumstances has only the *imperfect right of self-defense*, having lost the benefit of perfect self-defense, and is guilty at least of voluntary manslaughter. *State v. Potter, supra; State v. Watson*, 287 N.C. 147, 214 S.E. 2d 85 (1975); *State v. Crisp*, 170 N.C. 785, 87 S.E. 511 (1916).

303 N.C. at 530.

It will be noted that elements (1) and (2) set out above are common to both perfect self-defense and imperfect self-defense. Applying those elements to the case at hand, we hold that the circumstances shown to exist at the time defendant shot Reid were not sufficient to create a reasonable belief in the mind of a person of ordinary firmness that killing Reid was necessary to save defendant from death or great bodily harm.

Although prior to the time that defendant left the lot and drove to his home, Reid had started two fights with him and had threatened to kill him, at the time defendant left, those altercations were over. It was a "new ballgame" when defendant returned to the lot. He admits that when he returned he had a pistol,

that he inquired as to where Reid was, that he found Reid standing by the open door of Byrd's car, that he walked up to Reid and "smacked" him, and that as Reid turned and reached in the car he shot him in his back. Under these circumstances, defendant was not entitled to an instruction on either type of self-defense.

The facts in *Norris* were entirely different. In that case the evidence tended to show that defendant was the estranged wife of Donald Norris, a former Marine sergeant; that he had left her and was living with Bernice Owens in her trailer; that the defendant had tried to contact her husband at his work and other places in order to obtain support money from him; that early in the morning in question defendant drove to the Owens' trailer and waited for her husband to come out; that when he came out, defendant told him that she wanted to talk to him; that he proceeded to curse her and struck her with his fists, knocking her to the ground; that she then saw Bernice Owens emerging from the trailer; that as defendant arose from the ground she saw her husband coming toward her again; that she reached in the passenger side of the car, got her pistol and shot her husband as he advanced on her; and that she shot him because she was afraid of him and felt that if he and Owens got to her she would not have a chance. These facts clearly warranted an instruction on perfect and imperfect self-defense.

All of defendant's assignments of error are overruled. We conclude that defendant received a fair trial free from prejudicial error.

No error.