STATE OF NORTH CAROLINA v. MARVIN DAVID PENNELL

No. 7821SC616

(Filed 20 October 1981)

**1. Burglary and Unlawful Breakings § 5.5— sufficiency of the evidence—forceful breaking**

The evidence was sufficient for the jury to find defendant entered a building through an unlocked window, thereby forcibly breaking, where the evidence showed that officers checked the building and found no one inside before positioning themselves for a "stake-out"; that they locked the doors; that they later saw defendant in the building; that they observed muddy footprints on the outside and inside of a window ledge and on the floor nearby; and that the windows were usually kept shut and locked at all times.

State v. Pennell

2. **Constitutional Law § 31— unidentifiable fingerprints destroyed—no violation of defendant's rights**

   Defendant's conviction was not obtained in violation of either the Jencks Act, 18 U.S.C. § 3500, or G.S. 14-221.1 when unidentifiable fingerprints lifted from the scene of the crime were thrown away as irrelevant.

3. **Burglary and Unlawful Breakings § 5.10; Safecracking § 1— crimes of burglary with explosives and safecracking not identical**

   The elements of the crimes of burglary with explosives and safecracking are not identical for offenses committed before 1 October 1977. The predecessor to G.S. 14-89.1 provided as an essential element that the safe or vault be used for storing money or other valuables.

4. **Criminal Law § 157— failure to properly prepare record—cannot benefit**

   Appellant has the duty to properly prepare the record on appeal, and he cannot benefit from his failure to include an indictment.

5. **Burglary and Unlawful Breakings § 3— warrant and indictment for burglary with explosives—failure to specifically allege entry without consent**

   The language that defendant "unlawfully and willfully did feloniously break and enter a building of Forsyth Technical Institute, belonging to the Board of Trustees," was sufficient to imply that defendant's entry was without the consent of the Board, and it was not error to fail to specifically allege entry without consent in either the warrant or indictment.

6. **Criminal Law § 91.7— motion for continuance—absence of witnesses**

   It was not error for the court to deny defendant's motion for a continuance in order to subpoena witnesses who would testify defendant had a beard at the time of the crimes as it was an untimely oral motion violating G.S. 15A-952(b)(1), there was no indication the witnesses could be found if the trial was delayed, and three witnesses did testify defendant had a beard at the time of the alleged crimes.

7. **Constitutional Law § 48— effective assistance of counsel**

   There was no merit to defendant's allegation he was denied effective assistance of counsel as numerous instances of alleged ineffective assistance revealed the failures of defense counsel were either nonprejudicial, speculative or justifiable strategy, and defendant's representation was not so lacking that defendant's trial became a "farce and mockery" of justice.

APPEAL by defendant from *Albright, Judge.* Judgments entered 28 January 1977 in Superior Court, FORSYTH County. Heard in the Court of Appeals 31 August 1981.

On 3 January 1977 defendant was indicted for burglary with explosives and for safecracking. The indictment, however, as to this latter offense does not appear in the record on appeal. Defendant was found guilty by a jury and sentenced to not less than

40 nor more than 60 years on the burglary with explosives conviction. Prayer for judgment was continued as to the safecracking conviction. Defendant then gave due notice of appeal. On 25 April 1977 defense counsel filed a document with this Court indicating therein that he found no grounds for appeal and requested the Court to review for any error. On 6 October 1977 this Court entered an order allowing defense counsel's 4 October motion to withdraw the record on appeal. On 21 November 1978 we dismissed the appeal noting in the dismissal order that no briefs had been submitted and that no exceptions or assignments of error appeared in the record. A petition for writ of certiorari was denied on 8 January 1979. By order of a U.S. Magistrate dated 11 December 1980, a writ of habeas corpus was issued. The Magistrate ordered that defendant's conviction be vacated and that he be released from custody unless afforded a right to direct review by the North Carolina appellate courts within sixty days. Pursuant to this order, we granted a rehearing on 5 February 1981.

The evidence in the record for the State tends to show that at approximately 11:00 p.m. on 16 November 1976 Officer McGee of the Forsyth County Sheriff's Department received information that the safe at Forsyth Technical Institute would be "blown." He immediately contacted Officer Charles Reavis (hereinafter Charles) also from the Sheriff's Department and Officer T. L. Reavis (hereinafter T. L.) from the Winston-Salem Police Department. These three officers, along with others, then devised a plan to stake out the building in which the safe was housed. T. L. positioned himself in a room next to the office containing the safe. Charles positioned himself in a classroom at the opposite end of the building. About 12:15 a.m. T. L. observed the silhouettes of two people walking down the hall and entering the office. For the next 25 minutes he heard a hammering noise coming from the office. He heard an explosion and ran into the hall. He saw a white male enter the hallway and run in the direction of the classroom where Charles was stationed. T. L. recognized the man as defendant and testified that prior to this date he knew defendant by sight only. As soon as Charles heard the explosion he opened the door to the classroom and observed an individual running down the hall. He pointed his shotgun at the man and ordered him to halt. The man ran past him and was unsuccessfully pursued by

State v. Pennell

Charles and other officers who had been stationed outside the building. Charles immediately recognized the man as defendant and testified that he had seen him on prior occasions. Charles notified the other officers of defendant's identity as soon as he fled from the building. Both officers testified that defendant was wearing a toboggan, green and yellow plaid jacket and dark pants. They observed that defendant had some facial hair but not a full beard. At the time defendant was observed by the two officers, the hallway was well lit. After giving up pursuit, the officers returned to the building and noticed that the handle had been blown off the safe and that the safe was partially open. Tools were lying on the floor nearby. A window was found unlocked in an office at the other end of the building and muddy footprints were observed on a ledge both outside and inside the window as well as on the floor. It had been raining the night before. The officers testified that when they entered the building to take their positions, they first checked to see if anyone was present. After finding no one, they locked all doors.

Other evidence for the State tends to show that around 4:30 a.m. on 17 November defendant rang the doorbell of Donna Moore's residence. He asked to use the telephone and informed her that he had been in a motorcycle accident. Her description of defendant's clothing matched that of the two officers. She observed that defendant's pants were muddy from the knees down. Miss Moore indicated that defendant had been at her home two weeks prior to 17 November.

Defendant's mother and sister testified on his behalf. Their testimony tends to show that defendant was at home until about 12:20 a.m. on 17 November 1976 and that he had a full facial beard on said date. Defendant's mother emphasized that the Institute was located approximately 10 miles from her home. Additional testimony from a Forsyth County district court judge and deputy sheriff, tended to corroborate the evidence that defendant had a full beard on the date at issue. Both men emphasized that the beard was blonde.

*Attorney General Edmisten, by Assistant Attorney General W. Dale Talbert, for the State.*

*Billings, Burns and Wells, by R. Michael Wells, for defendant appellant.*

MORRIS, Chief Judge.

Pursuant to this Court's 4 February 1981 order defendant's counsel on appeal has submitted an amended record which includes exceptions and assignments of error. Ten of these assignments of error have been preserved on appeal.

[1] By his thirteenth assignment of error, which has been erroneously referred to as Assignment of Error No. 16, defendant argues that the trial court should have dismissed the charge of burglary with explosives because there was insufficient proof of the essential element of an alleged breaking. He emphasizes that the testimony merely shows that a window was found unlocked on the west side of the building. There was no evidence of a forceful breaking. A security officer at the Institute testified that he was told by a police officer soon after the explosion that the defendant entered the building through one of the windows on the east end. Officer T. L. Reavis admitted that he and Officer Charles Reavis did not check the windows before taking their respective positions in the building. When *all* of the evidence is considered in the light most favorable to the State and the State is given every reasonable inference to be drawn therefrom, we believe there is sufficient evidence to support the element of a breaking. Such evidence may be direct, circumstantial or both. The testimony showed that the two officers checked the building and found no one, that they locked the doors, that they later saw defendant in the building and that they observed muddy footprints on the outside and inside of a window ledge and on the floor nearby. The security officer testified that the windows were usually kept shut and locked at all times. This testimony constituted sufficient evidence from which a jury could find that defendant entered the building through an unlocked window. The North Carolina courts have held that when a person opens a closed, but not fastened window, a breaking condemned by the pertinent statute has been shown. *See State v. McAfee*, 247 N.C. 98, 100 S.E. 2d 249 (1957); *State v. Bronson,* 10 N.C. App. 638, 179 S.E. 2d 823 (1971).

In Assignment of Error No. 17 defendant argues that the trial court expressed an opinion in its jury charge by unduly emphasizing the State's contentions while downplaying those of defendant, thus requiring a new trial. We have carefully reviewed

this portion of the charge and fail to see how it could constitute an expression of opinion by the trial court. The trial court, instead, gave an accurate recapitulation of the testimony of the witnesses. At the beginning of each paragraph at issue in the charge, the court emphasized that it was charging upon either the State's or defendant's contentions. Furthermore, immediately after stating these contentions, the court informed the jury not to consider anything the court had said or done as an expression or intended expression of what their verdict should or should not be. This assignment of error is meritless.

[2] In Assignment of Error No. 16 defendant argues that his "conviction was obtained in violation of the Constitution of the United States and of North Carolina in that the State destroyed material evidence in which may have affected the outcome of the trial, to wit: the fingerprint evidence." In support of this argument defendant cites G.S. 14-221.1 and the Jencks Act, 18 U.S.C. § 3500 (1979). Neither is applicable here. The uncontested testimony indicates that none of the latent fingerprints lifted at the scene was identifiable, and all of them were, therefore, thrown away. G.S. 14-221.1 provides that the destruction of evidence relevant to any criminal offense is a felony. The fingerprints at issue were unidentifiable and, thus, irrelevant. The Jencks Act applies only to criminal prosecutions brought by the United States and to statements or reports made by government witnesses.

Defendant has also assigned error to the following portion of the jury charge:

> Now, members of the jury, if you do not find the defendant guilty of burglary with explosives, you must determine whether he is guilty of felonious breaking or entering. Felonious breaking or entering differs from burglary with explosives in that firstly, both a breaking and an entry are not necessary, either is sufficient.
>
> And, secondly, it is not necessary that the defendant open anything after he enters.

Defendant argues that this definition of felonious breaking or entering was insufficient as a matter of law, because the trial court failed to explain the essential elements of this offense. The

court's instructions on burglary with explosives and the lesser included offense of felonious breaking or entering are consistent with the pertinent Pattern Jury Instructions. N.C.P.I.—Crim. 214.65. Furthermore, prior to this portion of the charge, the court properly defined the terms "breaking" and "entering." We find no error in this portion of the charge.

[3] In Assignment of Error No. 20, defendant contends that since the indictment for safecracking should have been merged with the indictment for burglary with explosives, the trial court should arrest judgment as to the safecracking conviction. His basis for this argument is that the essential elements of both offenses are identical. We initially note that the issue here is not properly before this Court, because the record on appeal does not include the indictment for the offense of safecracking as required by App. R. 9(b)(3). The North Carolina courts have dismissed appeals from convictions when the pertinent indictments were not included in the record. See State v. Wray, 230 N.C. 271, 52 S.E. 2d 878 (1949); State v. Currie, 206 N.C. 598, 174 S.E. 447 (1934); State v. McDraughon, 168 N.C. 131, 83 S.E. 181 (1914). This Court, however, in its discretion and in light of defendant's later argument (that he was denied effective assistance of counsel by the failure of his attorney to include the safecracking indictment in the record), will consider the issue. Defendant has erroneously concluded that the elements of the crimes of burglary with explosives and safecracking are identical. Arguably this conclusion would be valid if defendant were being tried under G.S. 14-89.1, as it applies to offenses committed after 1 October 1977. The statute in effect, however, at the time of the alleged offenses provided as an essential element that the safe or vault be used for storing money or other valuables. Defendant's allegation that this element is "mere surplusage" was refuted by the North Carolina Supreme Court in State v. Hill, 272 N.C. 439, 158 S.E. 2d 329 (1968). Therein the Court indicated that evidence that defendant forced open a newly acquired safe not yet used by the owners to store money was insufficient to convict him of safecracking. They emphasized "that the evidence of the State . . . showed conclusively that one of the essential elements of the crime charged in the indictment was not present." Id. at 444, 158 S.E. 2d at 333.

[4] Defendant has also argued that the conviction for safecracking should be arrested, because the record on appeal does not con-

tain an indictment to support this conviction. Our courts have consistently held that the defendant appellant has the duty to see that the record on appeal is properly made up. *State v. Stubbs*, 265 N.C. 420, 144 S.E. 2d 262 (1965); *State v. McCain*, 39 N.C. App. 213, 249 S.E. 2d 812 (1978); *State v. Byrd*, 4 N.C. App. 672, 167 S.E. 2d 522 (1969). He cannot benefit from his own failure to properly prepare the record.

[5] As to the warrant and indictment for burglary with explosives, defendant argues that these documents are both fatally defective because they do not allege the essential element that his entry into the building was without the consent of the owners. Defendant concedes that the language of both the warrant and indictment tracks the language in the statute defining burglary with explosives. He alleges that this in itself is not sufficient unless the essential elements of the offense are included therein and cites *State v. McBane*, 276 N.C. 60, 170 S.E. 2d 913 (1969), as support. The indictment at issue alleged that:

> [O]n or about the 17th day of November, 1976, in Forsyth County Marvin David Pennell unlawfully and wilfully did feloniously break and enter a building of Forsyth Technical Institute, belonging to the Board of Trustees, located at 2100 Silas Creek Parkway, Winston-Salem, North Carolina, which was used for the administrative building of the Institution. While inside the building, the defendant opened a safe by the use of dynamite. The defendant broke and entered the building with the intent to commit a felony therein, to wit; larceny, with the unlawful, wilful, and felonious intent to take, steal, and carry away the goods and chattels of Forsyth Technical Institute.

We conclude that this indictment is sufficient after considering the language in G.S. 14-57, Burglary with Explosives, and the North Carolina Supreme Court's reasoning in *State v. Beaver*, 291 N.C. 137, 229 S.E. 2d 179 (1976). In *Beaver*, the Court found that the indictment for first degree burglary was sufficient. The indictment did not allege that the breaking and entering of the dwelling were without the consent of the occupant or owner. The Court emphasized that "[t]he bill of indictment alleged all the essential elements of the offense with sufficient certainty to (1) identify the offense; (2) protect the accused from being twice put

in jeopardy for the same offense; (3) enable the accused to prepare for trial; and (4) support judgment upon conviction or plea." *Id.* at 140-41, 229 S.E. 2d at 181. For the same reasons, the indictment at issue is valid. We further agree with the State's contention that the language in the indictment, that the defendant "unlawfully and wilfully did feloniously break and enter a building of Forsyth Technical Institute, belonging to the Board of Trustees," implies that defendant did not have the consent of the Board of Trustees.

[6] Defendant argues that the trial court abused its discretion in refusing to grant his oral motion for a continuance made at the close of the State's evidence. From the order of the court denying this motion, it appears that defendant sought the continuance in order to subpoena witnesses who would testify that he had a full beard at the time of the alleged crimes. The trial court found that no written motion had been filed as required by G.S. 15A-952(b)(1), that one of the additional witnesses desired by defendant was obtained and testified after an instanter subpoena was issued, that the two remaining witnesses sought by defendant were known to defense counsel prior to trial but that no subpoenas were issued until the first day of trial, and that the testimony of these two witnesses would only tend to be cumulative and corroborative of evidence already before the jury. This Court has recently determined that a trial court did not abuse its discretion in denying an oral motion for a continuance which was not timely made. *State v. Berry*, 51 N.C. App. 97, 275 S.E. 2d 269, *disc. review denied and appeal dismissed*, 303 N.C. 182, 280 S.E. 2d 454 (1981). We also fail to see how defendant could have been prejudiced by this denial of his motion since three witnesses, including a district court judge, testified that defendant had a beard at the time of the alleged crimes. During the sentencing phase of the trial, defendant informed the court that the two witnesses had not been present at trial because neither he nor his attorney knew where they lived. There was no indication that these witnesses would be found if the trial were delayed. This assignment of error is clearly without merit.

[7] Defendant's final assignment of error deals with the alleged denial of his constitutional right to effective assistance of counsel. He requests this Court to grant him a new trial because of this. The general rule, which has been adopted by this Court, is that

the caliber of an attorney's representation in a criminal prosecution is a denial of the constitutional rights of his client only when it is so lacking that the trial becomes a farce and mockery of justice. *State v. Roberts*, 49 N.C. App. 52, 270 S.E. 2d 559 (1980), *disc. review denied and appeal dismissed*, 301 N.C. 887, 276 S.E. 2d 286 (1981). Our examination of defendant's alleged instances of ineffective assistance of counsel reveals no such "farce and mockery." His allegations that he was denied effective assistance of counsel, due to his attorney's failure to move to quash the indictment for safecracking and to challenge the sufficiency of the indictment for burglary with explosives, are meritless in light of our prior discussions involving these indictments. Defense counsel's failure to move for a dismissal on the alleged basis that there was insufficient evidence of a breaking is clearly not prejudicial, because we earlier concluded that there was sufficient evidence to go to the jury on this essential element of burglary with explosives. Defense counsel's failure to move for discovery of the fingerprint test does not constitute ineffective assistance of counsel, because the uncontested evidence indicated the prints were unidentifiable. His failure timely to move for a continuance and his failure to subpoena the pertinent witnesses have also been shown to be non-prejudicial and justifiable. The evidence indicates that this motion was made in order to allow time to subpoena witnesses whose whereabouts were unknown to defendant and his attorney.

Defendant further alleges that his counsel was ineffective when he failed to challenge the admissibility of certain portions of Officer McGee's testimony. Officer McGee told the court and jury that two weeks prior to the alleged crimes he talked with defendant. Defendant informed him that "something big was going-down in Winston-Salem" and "I don't know where I'm going to hit it." McGee indicated that defendant had supplied him with information in the past. Defendant contends that this testimony should have been excluded because the statements could have been elicited during a "custodial interrogation." This contention is sheer speculation and unsupported.

Defendant also argues that his attorney's failure to move for a voir dire examination and suppression of his in-court identification by Officers T. L. and Charles Reavis is grounds for a new trial. T. L. Reavis testified that on the night of the alleged crimes,

he saw a white male step out into the lighted hall of the building at the Institute and look in his direction. He testified, "I was able to see his face and could recognize him. The person I saw was the defendant, Marvin David Pennell. . . . I could positively say that was Marvin David Pennell that I saw that night." Charles Reavis indicated that he observed defendant for approximately three seconds as he ran towards him in the hallway of the building. He stated, "There is no question in my mind that the gentleman that came out in that hallway and that I pursued that night is the defendant sitting there in that chair." Both officers testified that they had seen defendant on prior occasions. Their description of the clothing that defendant was wearing that night also matches that given by Miss Moore. The North Carolina Supreme Court dealt with an ineffective representation claim based on an Attorney's failure to request a voir dire examination concerning a witness' in-court identification of defendant in *State v. Mathis*, 293 N.C. 660, 239 S.E. 2d 245 (1977). The Court stated:

> The record indicates no impermissible pre-trial identification procedures. While the defendant's counsel did not request a voir dire examination of the prosecuting witness before she was permitted to identify the defendant in court as her assailant, the record indicates no basis for the belief that such an examination would have tainted her in-court identification. . . . Under these circumstances, the failure of counsel to demand a voir dire examination of the prosecuting witness, prior to her in-court identification, cannot be deemed such evidence of ineffective assistance of counsel as to warrant the granting of a new trial.

*Id.* at 670-71, 239 S.E. 2d at 252. This statement equally applies to the case on appeal. Defendant's further contention that his in-court identification was tainted by Officer Charles Reavis' viewing of defendant in a jail cell the day after the alleged crimes is also without merit. Charles testified that he picked defendant out "even though he was in a cell with other people." Even if the facts had indicated that this pre-trial confrontation was impermissibly suggestive, the in-court identification would still have been admissible because the officers' in-court identifications were independent in origin from the pre-trial confrontation. *See State v. Jordan*, 49 N.C. App. 560, 272 S.E. 2d 405 (1980) and cases cited therein.

Defendant's allegations, that defense counsel was ineffective because he called defendant's mother as a witness and did not properly cross-examine witnesses also must fail as grounds for granting defendant a new trial. Ineffective assistance of counsel claims are "not intended to promote judicial second-guessing or questions of strategy as basic as the handling of a witness." *Sallie v. North Carolina*, 587 F. 2d 636, 640 (4th Cir. 1978), *cert. denied*, 441 U.S. 911, 60 L.Ed. 2d 383, 99 S.Ct. 2009 (1979).

We have reviewed defendant's remaining examples of alleged ineffective assistance of counsel and do not find that he was denied constitutionally effective representation at trial. Granted, defendant's attorney at trial noted no exceptions or assignments of error in the original record on appeal. Any prejudicial effect caused by this omission has been cured by this Court's consideration of the amended record on appeal wherein newly appointed counsel has entered numerous exceptions and assignments of error. We have considered this record and the arguments of counsel and find defendant's contentions to be either meritless or non-prejudicial.

No error.

Judges CLARK and WELLS concur.