STATE OF NORTH CAROLINA v. MAURICE LACATO PHIFER

No. COA03-972

(Filed 6 July 2004)

**1. Constitutional Law— effective assistance of counsel—failure to request jury instructions**

Defendant did not receive ineffective assistance of counsel in an assault with a deadly weapon with intent to kill inflicting serious injury case based on his counsel's failure to request jury instructions on self-defense, defense of a third party, and defense of habitation because given the great amount of evidence challenging the credibility of defendant's claim that he was acting in defense of himself, his estranged wife, and her home, the decision by defendant's trial counsel to decline the trial court's offer to instruct the jury on the pertinent defenses was reasonable.

STATE v. PHIFER

[165 N.C. App. 123 (2004)]

**2. Constitutional Law— effective assistance of counsel—failure to file notice of appeal**

Defendant did not receive ineffective assistance of counsel in an assault with a deadly weapon with intent to kill inflicting serious injury case based on his counsel's failure to file a notice of appeal on behalf of defendant, because assuming arguendo that defendant requested his trial counsel to file notice of appeal and that trial counsel neglected to do so, defendant has failed to convince the Court of Appeals that he was prejudiced by the alleged negligent deficient performance.

**3. Evidence— destruction—videotape**

Defendant was not prejudiced in an assault with a deadly weapon with intent to kill inflicting serious injury case by the destruction of evidence as a result of his trial counsel's failure to file an appeal, because: (1) although an order was entered to destroy evidence, the day after defendant was sentenced defendant does not contend that the evidence was destroyed or removed prior to the thirty-day period required by Rule 14 of the General Rules of Practice for the Superior and District Courts of North Carolina; (2) assuming arguendo that defendant and/or his trial counsel failed to receive written notification of the destruction of the exhibits, any error was harmless; and (3) although defendant specifically contends review of his videotaped statement to police might strengthen his ineffective assistance of counsel claim, defendant's videotaped statement further contradicts a potential claim of self-defense, defense of others, or defense of habitation when considered in light of the testimony at trial regarding the videotape.

Appeal by defendant from judgment entered 24 August 1999 by Judge Claude S. Sitton in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 April 2004.

*Attorney General Roy Cooper, by Assistant Attorney General C. Norman Young, Jr., for the State.*

*Rudolf Maher Widenhouse & Fialko, by Andrew G. Schopler, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Maurice Lacato Phifer ("defendant") appeals his conviction of assault with a deadly weapon with intent to kill inflicting serious

injury. For the reasons stated herein, we hold defendant received a trial free of prejudicial error.

The State's evidence presented at trial tends to show the following: Sometime before June of 1996, defendant's wife, Cassandra Phifer ("Cassandra"), began a sexual relationship with a former high school friend, John Lewis Southerland ("Southerland"). Defendant was unaware of Cassandara's relationship with Southerland. In June of 1996, defendant and Cassandra separated, and defendant moved into a different apartment. In October of 1996, defendant and Cassandra reconciled. Defendant returned to the apartment he had previously shared with Cassandara. However, unbeknownst to defendant, Cassandra continued her sexual relationship with Southerland.

On 25 June 1997, Cassandra and Southerland were spending the afternoon together at the home Cassandra shared with defendant. Shortly after Cassandra and Southerland had sexual intercourse, defendant returned home with a friend, Chris Young ("Young"). Cassandra instructed Southerland to hide in the bedroom closet while she talked to defendant. She then went to the front of the house and laid down on a couch. When defendant expressed his surprise at Cassandra's presence at the home, Cassandra told defendant she felt sick and thought she might be pregnant. She then asked defendant to go to the grocery store to buy her a pregnancy test and some ginger ale. Defendant and Young walked out the front door, and Cassandra locked it behind them.

A moment later, defendant returned and knocked on the front door. Cassandra let defendant inside, and asked him if he had forgotten something. Defendant asked Cassandra where their daughter was, and Cassandra told defendant the child was in her sister's care. When defendant noticed Cassandra was nervous and was continually looking over her shoulder, defendant asked Cassandra, "you ain't got no other ****** up in here, do you?" Cassandra responded that she did not. Defendant then picked up a bag of chips and began walking through the other rooms of the house. Cassandra followed defendant to the bedroom where Southerland was hiding. Cassandra implored that defendant "just go to the store and get the stuff." Defendant stated that if no one else was in the home, he would look in the closet. Cassandra told defendant that he did not need to look in the closet. Defendant then told Cassandra he was going to get his gun.

STATE v. PHIFER

[165 N.C. App. 123 (2004)]

Cassandra followed defendant to the bathroom, where defendant's gun was located. Cassandra tried to prevent defendant from entering the bathroom, telling him that he did not need a gun. A struggle ensued, and Cassandra's bracelet fell off and her shirt was torn. Defendant managed to locate and pick up his 9mm handgun. Defendant and Cassandra then returned to the bedroom. After Southerland heard defendant state "I'm about to shoot up the closet," Southerland decided to exit the closet. Just as Southerland emerged from the closet, defendant reached for the closet door. Southerland and defendant bumped into one another, and defendant's gun went off. Southerland was shot in the right side of his neck. As a result of his injuries, Southerland is now quadriplegic.

Immediately after the shooting, defendant walked past Cassandra and told her, "you're a whore, you're next." At trial, defendant testified that he then fled the scene in his vehicle and dropped Young off "because at that time I didn't know where I was going or what was going on." After dropping off Young, defendant drove his vehicle until it ran out of gas. The next day, defendant turned himself in to the Charlotte-Mecklenburg Police Department. Defendant does not remember what happened to the gun after the shooting.

Defendant was indicted and tried for assault with a deadly weapon with intent to kill inflicting serious injury. On 20 August 1999, the jury returned a guilty verdict, on 23 August 1999, the trial court sentenced defendant to 100 months to 129 months incarceration. On 24 August 1999, the trial court ordered the exhibits from the trial destroyed, pending notice of appeal within thirty days. Defendant did not thereafter file an appeal. However, on 28 June 2002, this Court granted defendant's "Petition for a Writ of Certiorari," thereby allowing the instant appeal to proceed.

---

As an initial matter, we note that defendant's brief contains arguments supporting only five of his original thirteen assignments of error. Pursuant to North Carolina Rule of Appellate Procedure 28(b)(6) (2004), the eight omitted assignments of error are deemed abandoned. Therefore, we limit our present review to those assignments of error properly preserved by defendant for appeal.

[1] Defendant first argues that he received ineffective assistance of counsel at trial because his counsel failed to request a jury instruction on self-defense, defense of a third party, and defense of habitation. Defendant asserts that his trial counsel's performance was deficient and resulted in prejudice to defendant. We disagree.

We note initially that although the preferred method for raising ineffective assistance of counsel is by motion for appropriate relief made in the trial court, a defendant may bring his ineffective assistance of counsel claim on direct appeal. On direct appeal, defendant's ineffective assistance of counsel claim "will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001), *cert. denied*, 535 U.S. 1114 (2002).

A successful ineffective assistance of counsel claim requires satisfaction of the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984) and adopted by our Supreme Court in *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241 (1985). First, defendant must establish that his counsel's performance was deficient in that it fell below an "objective standard of reasonableness." *Braswell*, 312 N.C. at 561-62, 324 S.E.2d at 248. Second, defendant must establish that a reasonable probability exists that but for the error, the result of defendant's trial would have been different. *Id.* at 563, 324 S.E.2d at 248.

During the charge conference in the instant case, the following exchange occurred between the trial court and defendant's counsel:

THE COURT:     Now at this point the Court also will be making inquiry of the State and the defendant in regard to the evidence and whether or not, particularly the defendant, whether he contends the Court based upon this evidence should instruct as to self-defense, there being some evidence from the defendant's wife that he pushed or attempted to push or whatever the evidence reflects or shows.

Does the defendant contend and request self-defense?

TRIAL COUNSEL: May I have a moment to confer?

(Pause in Proceedings)

TRIAL COUNSEL: We will not be asking for that charge.

THE COURT:     You're saying then and telling the Court you're not requesting that, contending that is not a part

of his defense and the Court should not instruct, is that correct?

TRIAL COUNSEL: That is correct.

THE COURT: Now the same, the Court will be asking as to the defense of habitation of one's residence. Is there any request for that instruction?

TRIAL COUNSEL: Let me confer.

(Pause in Proceedings)

TRIAL COUNSEL: We will not be requesting that, Your Honor.

THE COURT: You're indicating that you do not desire that to be instructed to the jury as being a part of the evidence and a part of the defense in the case?

TRIAL COUNSEL: That is correct.

THE COURT: The Court will make further inquiry of the defendant whether or not he desires a defense of lawful defense of a third person?

TRIAL COUNSEL: If I might have just a moment.

(Pause in Proceedings)

TRIAL COUNSEL: We will not be. Thank you.

THE COURT: Are you asking the Court not to instruct based upon the possible evidence in the case and the strategy of the defense?

TRIAL COUNSEL: That is correct.

The trial court then instructed the jury only as to defendant's requested defense of accident.

The elements of self-defense are:

(1) it appeared to defendant and he believed it to be necessary to kill the [victim] in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3)  defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4)  defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Larry*, 345 N.C. 497, 518, 481 S.E.2d 907, 919 (1997).

The elements of self-defense are applicable to the defense of others. In general, one may use defensive force to protect another if that person "believes it to be necessary to prevent death or great bodily harm to the other 'and has a reasonable ground for such belief, the reasonableness of this belief or apprehension to be judged by the jury in light of the facts and circumstances as they appeared to the defender at the time of the [use of defensive force].' " *State v. Perry*, 338 N.C. 457, 466, 450 S.E.2d 471, 476 (1994) (quoting *State v. Terry*, 337 N.C. 615, 623, 447 S.E.2d 720, 724 (1994)). " 'The right to kill in defense of another cannot exceed such other's right to kill in his own defense as that other's right reasonably appeared to the defendant.' " *Id.*

The elements of defense of habitation are also similar to those governing self-defense. N.C. Gen. Stat. § 14-51.1(a) (2003) provides as follows:

A lawful occupant within a home or other place of residence is justified in using any degree of force that the occupant reasonably believes is necessary, including deadly force, against an intruder to prevent a forcible entry into the home or residence or to terminate the intruder's unlawful entry (i) if the occupant reasonably apprehends that the intruder may kill or inflict serious bodily harm to the occupant or others in the home or residence, or (ii) if the occupant reasonably believes that the intruder intends to commit a felony in the home or residence.

Defendant contends that his trial counsel's performance was deficient because each of the above-detailed defenses was supported by the evidence, and therefore no reasonable attorney would withhold consideration of a valid legal defense from the jury. However, given the great amount of evidence challenging the credibility of defendant's claim that he was acting in defense of himself, his estranged wife, and her home, we conclude that the decision by defendant's trial

counsel to decline the trial court's offer to instruct the jury on the pertinent defenses was reasonable.

Defendant testified that he searched the house "pretty much for [his] own personal security," and that his first thought when Southerland exited the closet was that Southerland "was in my house to do my family harm." However, defendant also testified that while searching the home, "me being hungry I reached in the kitchen [and] got me a bag of chips." He further testified that he "didn't suspect there was still someone in the bedroom area" when he returned to the home, and that the gun went off after he and Southerland "bumped into each other." Cassandra testified that she responded "no" after defendant asked her, "you ain't got no other ****** up in here, do you?" Cassandra also testified that while in the bedroom, she told defendant, "you don't have to look in the closet, just go to the store," to which defendant replied, "well, I'm going to get my gun." Cassandra further testified that on the way back to the bedroom after retrieving the gun, defendant looked "confused and upset," and pushed her out of the way after she struggled with defendant and said, "Maurice, you don't need no gun." Finally, Cassandra testified that after shooting Southerland, defendant walked past her and said, "you're a whore, you're next." Southerland testified that before he exited the closet, he heard defendant say, "I'm about to shoot up the closet."

As defendant correctly notes, strategic and tactical decisions such as whether to request an instruction or submit a defense are "within the 'exclusive province' of the attorney." *State v. Rhue,* 150 N.C. App. 280, 290, 563 S.E.2d 72, 79 (2002), *appeal dismissed and disc. review denied,* 356 N.C. 689, 578 S.E.2d 589 (2003). Trial counsel are thereby given wide latitude in their decisions to develop a defense, and "[s]uch decisions are generally not second-guessed by our courts." *State v. Lesane,* 137 N.C. App. 234, 246, 528 S.E.2d 37, 45, *appeal dismissed and disc. review denied,* 352 N.C. 154, 544 S.E.2d 236 (2000). In the instant case, defendant's trial counsel chose not to request that the trial court instruct the jury on defenses that were contradicted by the great weight of the evidence as well as the testimony of all witnesses but defendant. We conclude that the trial counsel's decision was not so objectively unreasonable that " 'the trial [became] a farce and mockery of justice.' " *State v. Montford,* 137 N.C. App. 495, 502, 529 S.E.2d 247, 252, *cert. denied,* 353 N.C. 275, 546 S.E.2d 386 (2000) (quoting *State v. Pennell,* 54 N.C. App. 252, 261, 283 S.E.2d 397, 403, *disc. review denied and appeal dismissed,* 304 N.C. 732, 288 S.E.2d 804 (1982)). Thus, we overrule defendant's argument

that he received ineffective assistance of counsel when his counsel failed to request jury instructions on self-defense, defense of habitation, and defense of others.

**[2]** Defendant next assigns error to his trial counsel's failure to file a notice of appeal on behalf of defendant. Defendant argues that his trial counsel's failure to file an appeal constituted deficient performance that resulted in prejudice to defendant.

We note initially that in a footnote contained within his brief, defendant requests this Court take judicial notice of the fact that trial counsel did not consult defendant regarding his right to an appeal. Defendant's trial counsel denied this allegation in an affidavit attached to the State's response to defendant's petition for writ of certiorari. This Court's review of matters before it is based "solely upon the record on appeal and the verbatim transcript[.]" N.C.R. App. P. 9 (2004). It is the appellant's responsibility to ensure that the record before this Court is complete and in proper form. *State v. Thigpen*, 10 N.C. App. 88, 92, 178 S.E.2d 6, 9 (1970). Beyond defendant's bald assertion that his trial counsel "neglected even to consult with [defendant] about his right to an appeal," the record before us contains no evidence pertaining to conversations between defendant and his trial counsel concerning defendant's decision to appeal. Therefore, we refuse to take judicial notice of this fact.

Assuming *arguendo* that defendant requested his trial counsel to file notice of appeal and that trial counsel neglected to do so, defendant has nevertheless failed to convince this Court that he was prejudiced by the alleged deficient performance. As defendant correctly states, "[t]he usual remedy for a failure to file notice of appeal is to reinstate the appeal." This Court reinstated defendant's appeal in the 28 June 2002 Order granting defendant's "Petition for a Writ of Certiorari." However, defendant contends that because the alleged deficient performance precipitated "further injury" to defendant, namely the destruction of exhibits, "the remedy should be a new trial or at least a hearing on a Motion for Appropriate Relief." We find no authority to support this contention, and for the reasons discussed below, we fail to see how defendant was injured by the destruction of the exhibits. Thus, we overrule defendant's argument that he received ineffective assistance of counsel because his counsel failed to file appeal on his behalf.

**[3]** Defendant argues alternatively that if his trial counsel's failure to appeal was not ineffective assistance of counsel, the destruction of

evidence as a result of the failure to file an appeal was prejudicial to him. Defendant argues that the trial court committed reversible error by issuing the order to destroy exhibits #1-47 because the destruction of the evidence "deprived defendant of his rights to, *inter alia*, due process and fair appellate review of his conviction and sentence."

Rule 14 of the General Rules of Practice For the Superior and District Courts of North Carolina (2003) provides:

> Once any item of evidence has been introduced, the clerk (not the court reporter) is the official custodian thereof and is responsible for its safekeeping and availability for use as needed at all adjourned sessions of the court and for appeal.
>
> . . . .
>
> Whenever any models, diagrams, exhibits, or materials have been offered into evidence and received by the clerk, they shall be removed by the party offering them, except as otherwise directed by the court, within 30 days after final judgment in the trial court if no appeal is taken; if the case is appealed, within 60 days after certification of a final decision from the appellate division. At the time of removal a detailed receipt shall be given to the clerk and filed in the case file.
>
> If the party offering an exhibit which has been placed in the custody of the clerk fails to remove such article as provided herein, the clerk shall write the attorney of record (or the party offering the evidence if he has no counsel) calling attention to the provisions of this rule. If the articles are not removed within 30 days after the mailing of such notice, they may be disposed of by the clerk.

In the instant case, the trial court issued an Order of Disposition of Physical Evidence requiring destruction of forty-seven of the "articles introduced into evidence," including the videotape defendant asserts is "crucial" to the instant appeal. Although the order was entered 24 August 1999, the day after defendant was sentenced, defendant does not contend nor do we conclude the evidence was destroyed or removed prior to the thirty-day period required by Rule 14. In fact, the bottom of the order reads:

> NOTE***THIS EVIDENCE TO BE HELD THIRTY DAYS PEND-ING NOTICE OF APPEAL

(emphasis in original). Nevertheless, assuming *arguendo* that defendant and/or his trial counsel failed to receive written notification of the destruction of the exhibits, for the reasons discussed below, we conclude any such error by the trial court was harmless.

Defendant contends that this Court should adopt the rule of *Adams v. Transportation Ins. Co.*, 845 S.W.2d 323 (1992). In *Adams*, the Texas Court of Appeals reversed and remanded a worker's compensation claim, holding that the loss of exhibits used during the trial made it impossible for the court to make a proper determination of whether the trial court's finding was against the weight and preponderance of the evidence. *Id.* at 327. However, we remind defendant that the decisions of the Texas Court of Appeals are not binding upon this Court or other courts in this state. Furthermore, in the instant case, defendant is not challenging a finding of fact made by the trial court or the trial court's decision to allow the introduction of the destroyed exhibits, nor is defendant challenging his trial counsel's decision not to object to the introduction of the destroyed exhibits. Instead, defendant asserts that the exhibits, specifically his videotaped statement, "could well have determined whether [defendant's] appellate arguments carried the day." Specifically, defendant contends that if this Court could review the videotape, his ineffective assistance of counsel argument might be strengthened.

The videotaped statement defendant refers to was taken by Charlotte-Mecklenburg Police Department Officer Robert Buening ("Officer Buening") on 26 June 1999, the day after the shooting. Officer Buening testified at trial that during his taped interview with defendant, defendant admitted being in the bedroom when Southerland was shot but did not admit or deny shooting Southerland. Officer Buening also testified that defendant stated that he had handled a BB or pellet gun sometime before Southerland was shot, but that he did not have the BB or pellet gun when Southerland was shot. Although the videotape was played for the jury, when questioned at trial about the statements he made on the videotape, defendant could not recall discussing a BB or pellet gun. However, he did recall being "still upset, nervous" when he made the statement to Buening. On cross-examination, defendant testified that:

> The statement I gave them was—I don't want to say true or false or accurate. I was telling them how I felt that things had went the day before.

On re-direct examination, defendant admitted that the videotaped statement was "incomplete," and that the story he related to the jury on direct examination was the "complete story."

When considered in light of the testimony at trial regarding the videotape, we conclude defendant's videotaped statement further contradicts a potential claim of self-defense, defense of others, or defense of habitation. As such, the videotape only supports our conclusion that defendant's trial counsel was not objectively unreasonable in withholding the undeveloped and potentially futile defenses from the jury. Thus, we conclude the videotaped statement is unnecessary to our present review of whether defendant received ineffective assistance of counsel. Therefore, defendant's final assignment of error is overruled.

No error.

Judges McGEE and TYSON concur.