STATE OF NORTH CAROLINA v. DONALD LEE McCORMICK

No. COA09-1032

(Filed 18 May 2010)

**1. Indictment and Information— first-degree burglary—nominal error—indictment not fatally defective**

The trial court did not err in denying defendant's motion to dismiss the charge of first-degree burglary because there was no fatal variance between the indictment and the proof adduced at trial. Although the indictment alleged that the breaking and entering occurred at 407 Ward's Branch Road and the evidence indicated that the house number was 317, this was a nominal or inconsequential error which did not render the indictment fatally defective.

**2. Burglary and Unlawful Breaking or Entering— subject matter jurisdiction—indictment sufficient**

The trial court did not lack jurisdiction over a first-degree burglary case where the indictment failed to allege that the breaking and entering was done "without consent" because this element is not required to be specifically pled.

**3. Criminal Law— judicial notice—time of sunset—no error**

The trial court in a first-degree burglary case did not impermissibly supply the essential element of an act being done at "nighttime" by taking judicial notice of the time of sunset. The application of judicial notice in this case was a routine application of this evidentiary rule.

STATE v. McCORMICK

[204 N.C. App. 105 (2010)]

Appeal by defendant from judgment entered 11 February 2009 by Judge Ronald E. Spivey in Watauga County Superior Court. Heard in the Court of Appeals 12 January 2010.

*Attorney General Roy Cooper, by Assistant Attorney General, G. Mark Teague, for the State.*

*Megerian & Wells, by Franklin E. Wells, Jr., for defendant appellant.*

HUNTER, JR., Robert N., Judge.

Donald Lee McCormick ("defendant") appeals as a matter of right from a verdict finding him guilty of two counts of assault by pointing a gun, two counts of communicating threats, assault with a deadly weapon inflicting serious injury and first-degree burglary. On appeal, defendant argues that the trial court erred in the following manner: (1) by denying defendant's motion to dismiss the first-degree burglary charge at the close of the evidence because of an alleged fatal variance between the indictment and the proof adduced at trial; (2) by hearing evidence regarding the first-degree burglary charge based on his contention that the trial court lacked jurisdiction because the indictment failed to allege, or there was insufficient proof, that the property was taken "without consent"; (3) by improperly taking judicial notice of the time of sunset, a necessary element of first-degree burglary; and (4) by submitting an improper verdict sheet and entering an improper judgment in the charges of pointing a gun at and communicating threats to Matthew Minton. After review, we hold that defendant's trial and judgment was free of error.

## I. FACTUAL BACKGROUND

The Watauga County grand jury indicted defendant for two counts of assault by pointing a gun, two counts of communicating threats, assault with a deadly weapon inflicting serious injury and first-degree burglary. The language, as pertinent to this appeal, contained in the 1 January 2008 indictment for first-degree burglary, in violation of N.C. Gen. Stat. § 14-51 (2009), provided the following:

> The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did during the nighttime [] break and enter the dwelling house of Lisa McCromick [sic] located at 407 Wards Branch Road, Sugar Grove, Watauga County. At the time of the breaking and entering

the dwelling house was actually occupied by Timothy James Ward, Amy Dancy, and Matthew Minton. The defendant broke and entered with the intent to commit a felony therein, to wit: Assault with a Deadly Weapon Inflicting Serious Injury.[1]

At trial, the State's evidence tended to show the following: Defendant and Lisa McCormick ("Ms. McCormick") were married in 2001, had a daughter in 2003, and separated in 2006. After the couple separated, Ms. McCormick and the couple's daughter moved to a house located on Ward's Branch Road in Watauga County, North Carolina. The events which transpired and subsequently led to defendant's arrest and indictment occurred at the Ward's Branch Road residence.

On 1 January 2008, during the daylight afternoon hours, Ms. McCormick's brother Timothy James Ward ("Tim"), Tim's girlfriend Amy Dancy ("Amy"), and Matthew Minton ("Matthew") arrived at Ms. McCormick's house on Ward's Branch Road. They began drinking, playing poker, and listening to music while waiting for Ms. McCormick to arrive at the home. Approximately one hour after their arrival, Tim answered the telephone and recognized defendant's voice, who asked to speak to Ms. McCormick. Tim told defendant that Ms. McCormick was not at home, but was expected to arrive shortly; the phone call ended. Approximately five minutes later, defendant called a second time and began cursing at Tim when he answered defendant's call, whereupon Tim hung up the phone. Defendant called a third time and left a voice message when no one answered. Two other messages were subsequently left on the machine which Tim found threatening. Tim called his brother, Dennis Presnell ("Dennis"), and requested that he come to Ms. McCormick's house to help calm down defendant should he arrive. Dennis testified that he received three calls from Tim, the first at approximately 5:30 p.m., the second around 6:00 p.m., and the third call at approximately 6:15 p.m. On the third call, Dennis testified that he heard defendant's voice and recognized Tim's voice crying.

Approximately fifteen to twenty minutes after the last message from defendant to Tim, defendant arrived at Ms. McCormick's home, kicked in the backdoor, and fired three shots with his .22 caliber revolver. Matthew fled outside the home. Amy locked herself in a

---

1. State argues in its brief that the language of the indictment reads "during the nighttime between the hours of 6PM TO 7PM break and enter," however this language appears only in the warrant for arrest which was later replaced by the grand jury indictment quoted above.

bathroom. Tim initially ran to hide in the house, but after realizing his girlfriend Amy was locked in the bathroom, left his hiding place and approached the bathroom, at which point defendant hit Tim with the butt of the revolver, knocking him to the floor. Defendant continued to hit Tim about the face and head with the gun, stopping on several occasions to intermittently put the barrel of the weapon in Tim's mouth while threatening to shoot him.

Amy opened the bathroom door and saw defendant kicking and hitting Tim with the gun as he laid unconscious and bleeding. When Amy went to Tim's aid, defendant pulled her by her hair and threw her on the floor, while pointing the gun in her face and telling her, "Bitch, I will kill you."

Defendant dragged Tim into a nearby bedroom, whereupon Amy found a cell phone, called for emergency help, and fled to the back porch of the house. Tim regained consciousness and escaped out of the front door while defendant was momentarily distracted by the arrival of Tim's brother, Dennis, and Erin Street ("Erin"), Dennis's girlfriend. Tim collapsed into his brother's arms on the front porch as he was coming out of the front door. Dennis testified that he "believed it was like 8:30" and it was dark at the time he arrived at the home.

Defendant then emerged from the house, pulled out the revolver, pointed the barrel of the gun into Dennis's mouth, and asked Dennis if he wanted to die. Defendant threatened Erin also after she confronted defendant and slapped him. After this confrontation, Erin, Dennis, and Tim retreated to the driveway area. While they were retreating, a state trooper arrived and the trio took cover behind the highway patrol vehicle. Shortly thereafter, Deputy Edward Hodges and one other Watauga County Sheriff's Deputy arrived and arrested defendant. Lieutenant Green of the Watauga County Sheriff's Office testified that he was dispatched to the scene at approximately 7:07 p.m. and was the third officer to arrive at the scene.

Dr. Carol Olsen, the emergency medical physician who treated Tim, testified that his injuries included abrasions on his head, arms, and hip, damage to his teeth, a laceration to his right ear, a scalp laceration that was stapled, and a two-and-a-half-centimeter laceration through his lower lip that required stitches. Tim was confined to bed for two weeks and his injuries to his mouth and teeth required him to be fed by drinking from a straw.

At the close of the State's evidence, the State filed a motion with the court to take judicial notice of the time of sunset and civil twilight pursuant to Rule 201 of the North Carolina Rules of Evidence. The trial judge granted the State's motion and gave the jury the following instruction:

At the end of the State's case in chief Members of the Jury. The court will take judicial notice of two facts. In this case you may but are not required to accept as conclusive any fact judicially noticed by the Court.

The facts judicially noticed in this case are as follows. First that on January 1st, 2008 in Boone, North Carolina the sun set at 5:23 in the afternoon. And second, on January 1st[,] 2008 in Boone, North Carolina the end of civil twilight was 5:51 in the afternoon.

Civil twilight is defined to begin in the morning and to end in the evening when the center of the sun is geometrically six degrees below the horizon. This is the limit at which twilight illumination is sufficient under good weather conditions for terrestrial objects to be clearly distinguished. In [the] evening after the end of civil twilight artificial illumination is normally required to carry on outdoor activities.

Again, the Court will take judicial notice of these two facts, and you may but are not required to accept them as conclusive on these two issues.

Defendant's evidence tended to show the following: As his first witness, defendant recalled Deputy Edward Hodges. Deputy Hodges testified that the records of the Watauga County Sheriff's emergency system indicated that a 911 call was received from Melvie Ann Dollars at 7:06 p.m. This was the call to which Deputy Hodges responded when he arrived at Ward's Branch Road.

Defendant testified that he and Ms. McCormick lived together at the Ward's Branch Road residence after their separation during a brief, but failed attempt at reconciliation. Defendant moved out of the residence in April of 2007. Defendant further testified regarding his army service, employment history, and prior convictions for drunk driving and assault with a deadly weapon.

Regarding the 1 January 2008 incident, defendant testified that he called his wife's residence to speak with his daughter. Tim answered the phone and cursed at defendant. In two subsequent phone calls,

defendant testified that Tim told him that when his four-year-old daughter arrived at the house, he was going to have a "real good time with her." This conversation angered defendant. Defendant grabbed his gun and about ten minutes later arrived at 317 Ward's Branch Road, where he entered the house. Defendant testified that he did not intend to injure anyone when he entered the house, and that the gun accidentally fired when he came through the back door. Defendant describes the confrontations that took place in the house and admits to fighting with Tim and beating him.

On cross-examination, defendant admits that the answering machine showed the final call from defendant to the house to be at 6:36 p.m., and that it took defendant about 10 to 15 minutes to arrive thereafter. Defendant also admitted that it was getting dark when he arrived at the house. Furthermore, when the police arrived, defendant testified that he surrendered after being asked to do so.

At the close of all of the evidence, defendant renewed his motion to dismiss the charges, which was denied. After receiving instructions from the court, the jury found defendant guilty of two counts of assault by pointing a gun and communicating threats, assault with a deadly weapon inflicting serious injury, and first-degree burglary.

After the jury returned the verdict, the State presented evidence to the jury that defendant had attained the status of an habitual felon. The jury subsequently found defendant guilty of having attained such status. Defendant was sentenced within the presumptive range of 61 to 83 months' imprisonment for the first-degree burglary conviction to run consecutively with a 23- to 37-month sentence of imprisonment for assault with a deadly weapon inflicting serious injury. In addition, defendant was sentenced to 75 days' imprisonment to run concurrent with the other judgments for the two misdemeanor convictions of assault by pointing a gun and communicating threats. Defendant gave notice of appeal in open court.

## II. FIRST-DEGREE BURGLARY CONVICTION

Defendant's primary challenge in this appeal is to his conviction for first-degree burglary in violation of N.C. Gen. Stat. § 14-51. Specifically, defendant contends that (1) the trial court should have granted his motion to dismiss this charge on the basis that there was a fatal variance between the indictment and the proof, and (2) the trial court lacked jurisdiction because the indictment did not allege that the breaking and entering was done "without consent" and that

there was insufficient evidence of lack of consent. We disagree with both contentions.

First-degree burglary is defined as the unlawful breaking and entering of an occupied dwelling or sleeping apartment, at nighttime, with the intent to commit a felony therein. *State v. Hannah*, 149 N.C. App. 713, 719, 563 S.E.2d 1, 5 (2002). It is clear from comparing the elements of this common law crime, as described above from case law, and examining the indictment in this case that all of the legal elements of first-degree burglary were properly charged in the indictment.

## A. Fatal Variance Between the Indictment and Proof at Trial

[1] With regard to the first issue, defendant contends that the indictment was incomplete in charging the elements on the basis that it fails to properly identify the premises broken and entered into with sufficient certainty as to enable him to properly prepare a defense. In support, defendant cites that the indictment alleges that defendant "did break and enter the dwelling house of Lisa McCormick located at 407 Ward's Branch Road, Sugar Grove Watauga County"; however, the evidence adduced at trial indicated that the house number was 317 instead of 407.

The contention that a defendant is not sufficiently informed of the place of the crime, if the indictment misidentifies the street number of the dwelling where a crime has taken place, has been the subject of adjudication in our appellate courts. *State v. Davis*, 282 N.C. 107, 113, 191 S.E.2d 664, 668 (1972), has established the law on this point.

In *Davis*, the indictment alleged that "the defendant 'did unlawfully . . . break and enter the dwelling house of Nina Ruth Baker located at *840* Washington Drive, Fayetteville, North Carolina,' " but the evidence at trial tended to show that Ruth Baker lived at 830 Washington Drive. *Id.* Based on this indictment, where there was no controversy as to the location of Ms. Baker's residence, the Court concluded that

> [t]he description of the house in this case was adequate to bring the indictment within the language of the statute. This house was also identified with sufficient particularity as to enable the defendant to prepare his defense and plead his conviction or acquittal as a bar to further prosecution for the same offense. . . .

. . . We hold, however, that this inconsequential error in the street address appearing in the indictment does not render the indictment fatally defective.

*Id.*

We note that defendant's reliance on *State v. McDowell*, 1 N.C. App. 361, 161 S.E.2d 769 (1968), a Court of Appeals opinion which predated *Davis*, is misplaced. That opinion stands for the proposition that a fatal variance is present when the indictment alleges that the property entered was a "storehouse, shop, warehouse, banking house, counting house or other building" and the proof adduced at trial was in fact a "residence." *Id.* There is no identity issue present under these facts. As provided in *Davis*, a nominal or inconsequential error in the street address does not render the indictment fatally defective. *See Davis*, 282 N.C. at 113, 191 S.E.2d at 668. Moreover, defense counsel does not cite any case or posit any contention with regard to how, if at all, defendant was prejudiced by this error.

## B. Jurisdiction of the Trial Court Where the Burglary Indictment Did Not Allege the Element of "Without Consent"

[2] With regard to the first-degree burglary charge, defendant's second contention is that the trial court did not have jurisdiction to hear the charge because the indictment failed to allege that the breaking and entering was done "without consent" of the owner of the house. We disagree.

Our case law does not require that this element be specifically pled for the crime of burglary. *See State v. Pennell*, 54 N.C. App. 252, 283 S.E.2d 397 (1981). The Court in *State v. Pennell* held that "language in the indictment, that the defendant 'unlawfully and wilfully did feloniously break and enter a building of Forsyth Technical Institute, belonging to the Board of Trustees' implies that defendant did not have consent of the Board of Trustees." *Id.* at 260, 283 S.E.2d at 402. In the case at bar, the identical language of the indictment carries the same implication or presumption as in *Pennell*. Defendant did not place this "consent" issue in controversy, but rather understood, according to his testimony, that he would not be welcomed at his estranged wife's house.

We hold that the indictment met the requirements of both statutory and common law and find no error in the criminal pleadings of this case.

## III. JUDICIAL NOTICE

[3]  Defendant argues that taking judicial notice of the time of sunset in a burglary case, which requires that the acts be done at "nighttime," has the effect of impermissibly supplying an essential element of the offense, lowers the State's burden of proof, and amounts to an unfair weighing in by the Court. We disagree.

N.C. Gen. Stat. § 8C-1, Rule 201, Judicial Notice of Adjudicative Facts, provides as follows:

(a) *Scope of rule.*—This rule governs only judicial notice of adjudicative facts.

(b) *Kinds of facts.*—A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(c) *When discretionary.*—A court may take judicial notice, whether requested or not.

(d) *When mandatory.*—A court shall take judicial notice if requested by a party and supplied with the necessary information.

(e) *Opportunity to be heard.*—In a trial court, a party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

(f) *Time of taking notice.*—Judicial notice may be taken at any stage of the proceeding.

(g) Instructing jury.—In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

At the end of the State's case-in-chief, and before defendant began presentation of his defense, the State filed a written motion with the court to take judicial notice of the time of the sunset and the time of civil sunset as established by the Naval Observatory. The court, out of the presence of the jury, gave defendant the opportunity

to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. Subsequently, the judge instructed the jury that it "may, but is not required to, accept as conclusive any fact judicially noticed."

Our Courts have taken judicial notice of days, weeks, and months of the calendar. *See Weavil v. Myers*, 243 N.C. 386, 90 S.E.2d 733 (1956). Our Courts have also taken judicial notice of the time of sunrise and sunset on a particular date. *Oxendine v. Lowry*, 260 N.C. 709, 713, 133 S.E.2d 687, 687 (1963). Furthermore, our Courts have taken judicial notice of the phase of the moon and the time of its rising from the records of the U.S. Naval Observatory. *State v. Dancy*, 297 N.C. 40, 42, 252 S.E.2d 514, 515 (1979). The application of this rule of evidence in the present case is a routine application of this evidentiary principle, thus we hold that judicial notice was procedurally taken. The court committed no error in admitting the celestial timetable. *See also* Jason Emerson, Moonlight: Abraham Lincoln and the Almanac Trial, Journal of the Illinois State Historical Society (Summer 2001).

## IV. CLERICAL ERROR

Both the State and defendant agree that there is a clerical error in the record with regard to the sentencing sheet. On the judgment, the court inadvertently listed the criminal action number for a case of a crime against Mr. Minton, which the District Attorney had dismissed. It is clear from the text of the document and the trial transcript that defendant was only convicted of the offenses against Ms. Dancy and Mr. Presnell. We therefore remand the matter to the trial court for the limited purpose of correcting the file number on the judgment sentencing for the purposes of "making the record speak the truth".

## V. CONCLUSION

Based on the foregoing, we hold that there was no error in the trial of defendant, but remand this matter to the trial court for correction of clerical errors in the judgment sentencing defendant.

No error.

Judges ELMORE and JACKSON concur.